G. L. HART, *Plaintiff in Error,* v. THE STATE OF FLORIDA, *Defendant in Error.*

Division A.

Opinion Filed February 28, 1925.

1. No person has power to issue a search warrant, except a "Judge, including the Judge of any Circuit Court of this State or any Court of Record, or Criminal Court of Record, or County Judge or Justice of the Peace, having jurisdiction within the district where the place, vehicle or thing to be searched may be."

2. Statutes authorizing the search of a domicile are to be strictly construed and no presumptions of regularity are to be invoked in aid of the process under which a proper officer obeying its commands undertakes to justify it.

3. An indictment charging that the defendant "did then and there unlawfully have in his possession intoxicating liquor, to-wit, one quart of Scotch whisky, one pint Scotch whisky, one quart of Dry Gin, and one quart of Scotch whisky, broken, and the said G. L. Hart, whose Christian name is to the grand jurors unknown, had previously, on to-wit, the 14th day of March, A. D. 1921, been convicted in the County of Pinellas County, Florida, of a violation of the intoxicating liquor law, to-wit: Transporting intoxicating liquor," fails to charge a second offense of the prohibition laws of Florida.

A Writ of Error to the Circuit Court for Pinellas County; M. A. McMullen, Judge.

Judgment reversed.

*Thomas Palmer* and *W. F. Way,* for Plaintiff in Error;

*Rivers Buford,* Attorney General, and *J. B. Gaines,* Assistant Attorney General, for the State.

BROWNE, J.—The plaintiff in error, G. L. Hart, was convicted under an indictment charging him with unlawfully having in his possession "intoxicating liquor, to-wit, one quart of Scotch Whiskey, broken, and the said G. L. Hart, whose Christian name is to the Grand Jurors unknown, had previously, on to-wit the 14th day of March, A. D. 1921, been convicted in the County Court of Pinellas County, Florida, of a violation of the intoxicating liquor law, to-wit, Transporting intoxicating liquor."

The jury found "the defendant guilty as charged."

The record discloses, that under the guise of the authority of a search warrant, one Geo. M. Hazzard, calling himself "City Detective," accompanied by two police officers of the City of St. Petersburg, against the objection and protest of Mrs. Hart, the wife of the plaintiff in error, entered their home and proceeded to search it.

Mrs. Hart went into the bath room and slammed the door. Hazzard says he heard bottles breaking on the inside of the bath room, and he "rushed to the door, threw my shoulder to the door, and when I got inside, Mrs. Hart and one or two little girls were there, and she had one bottle in her hand, and pulled another out from underneath the bath tub."

There was a scuffle, in which Mrs. Hart struck Hazzard with a bottle and he grabbed hold of her and her little girl,

and held them until the two policemen, Bidaman and Good-
win, came upstairs.  Officer Goodwin took the bottle out
of Mrs. Hart's hand.

Officer Bidaman testified, that he was downstairs mak-
ing a search when he heard a "loud commotion upstairs,
crying and screaming."

Bidaman made two returns to the so-called search war-
rant; in one, he swears that he found "one bottle Scotch
Whisky, one part bottle Scotch Whisky; one broken bottle
Scotch Whisky, taken from the residence of G. L. Hart."

In the other he says, "I served this warrant by searching
the residence of G. L. Hart, at 208 W. 11th Ave. North, and
securing from same the following: One quart Scotch
whisky; one .quart Scotch whisky broken; one quart Dry
Gin; Hart not found."

Deputy Sheriff Horton Belcher, testified that he re-
ceived "a package supposed to contain whisky," from Haz-
zard; that he "put it in a cell at the jail," where it re-
mained until the morning of the trial; that the package
was wrapped up when he received it; that no one had access
to the package except himself and Sheriff Lindsey, and
that no trusty had access to it.

Police Goodwin testified they found in Hart's residence,
"1 qt. of Gin; 1 qt. of Scotch Whisky; 1 ½ qt. of Scotch
Whisky and a broken bottle."

It appears from the testimony that these articles were
wrapped and tied in a package.  When the package was
opened in court, the full bottle of Scotch Whisky was miss-
ing.

When Goodwin was asked whether he knew if this was
"the identical stuff or not," he replied, "I know that Gin
is the same bottle, and I know the other bottle is the same
bottle, but the full quart is gone."

In order to lay the foundation for introducing in evi-
dence the articles alleged to have been found in Hart's

house, the police officers testified specifically to the effect that they wrapped the bottles and broken bottle up in a package and delivered it to the sheriff's office; the deputy sheriff admits receiving from Policeman Hazzard "a package supposed to contain whisky," and that the package brought into court, looked like the identical package that was delivered to him; that it had been in a cell in the jail and brought from the jail to court. Yet, one full bottle of Scotch Whisky was missing from the package.

Disappearances of liquor such as occurred in this case, are not unusual incidents connected with the enforcement of prohibition laws, but the zeal of officers charged with this duty, is regarded by many as sufficient excuse for such disappearances, and makes them mere trivialities.

Timely objections were made by the plaintiff in error to the introduction in evidence of the residue of the intoxicating liquors said to have been found in the residence of the plaintiff in error, and to the testimony of the police officers as to what occurred when they invaded Hart's home under an alleged search warrant; which objections were overruled and exceptions duly taken.

The alleged search warrant was issued by the Municipal Judge of the City of St. Petersburg, upon an affidavit that does not comply with Chapter 9321, Acts of Legislature, 1923, providing for the issue of search warrants. However, as the search warrant was issued by a person having no authority to do so, we need not discuss the insufficiency of the affidavit upon which it was issued.

Section 3 of Chapter 9321, Acts of the Legislature of 1923, provides: "A search warrant authorized by law may be issued by any Judge, including the Judge of any Circuit Court of this State or any Court of Record, or Criminal Court of Record, or County Judge or Justice of the Peace, having jurisdiction within the district where the place, vehicle or thing to be searched may be."

Section 6186, Revised General Statutes, 1920, which provides, "Any committing magistrate may issue search warrants on application only made by affidavit, but only on probable cause," seems to be merged in Chapter 9321, as all officials authorized to act as a "committing magistrate", are included among those enumerated in Section 3 of Chapter 9321.

No officer, other than those enumerated in this section, therefore has power to issue a search warrant, and any attempt to do so by any other person is a high handed invasion of the sanctity of the home, and in violation of Section 22 of the Declaration of Rights of the Constitution of Florida, adopted by the people for the security of "their persons, houses, papers and effects."

As was well expressed by Mr. Justice Terrell in a case decided in the January, 1924, Term of this court:

"When searches and seizures are made pursuant to the command of a search warrant both the search warrant and the prerequisite oath or affirmation required for it must conform strictly to the constitutional and statutory provisions authorizing their issue. This is true because there is no process known to the law the execution of which is more distressing to the citizen or that actuates such intense feeling of resentment on account of its humiliating and degrading consequences."

As thus enunciated the law is in line with and is no doubt the child of our Anglo-Saxon spirit of liberty which holds. every man's house or dwelling as his castle, and which declares that it must not be invaded or subjected to an uninvited search except by a duly qualified officer, and then only in pursuance of a valid writ commanding it. White v. Wagar, 185 Ill. 195, 57 N. E. Rep. 26, 50 L. R. A. 60.

"As was said in Smith v. McDuffee, 72 Ore, 276, text 284, 142 Pac. Rep. 558, 143 Pac. Rep. 929, such searches are usually made without the consent of the occupant of a

domicile and the investigation being a proceeding *in in-vitum*, the statute authorizing it is to be strictly construed, and no presumptions of regularity are to be invoked in aid of the process under which a proper officer obeying its commands undertakes to justify.'' Jackson v. State, 87 Fla. 262, 99 South. Rep. 548.

We quote thus at length from a recent opinion of this court, not only because of its excellence, but because it seems necessary again to call it to the attention of the officers, whose functions and oaths of office impose upon them the high duty of protecting, supporting and defending the Constitution of the State of Florida.

In the case of Gouled v. United States, 255 U. S. 298, 65 L. Ed. 647, 41 Sup. Ct. Rep. 261, it was said: ''The prohibition of the Fourth Amendment is against all unreasonable searches and seizures and if for a government officer to obtain entrance to a man's house or office by force or by an illegal threat or show of force, amounting to coercion, and then to search for and seize his private papers would be an unreasonable and therefore a prohibited search and seizure, as it certainly would be, it is impossible to successfully contend that a like search and seizure would be a reasonable one if only admission were obtained by stealth instead of by force or coercion. The security and privacy of the home or office and of the papers of the owner would be as much invaded and the search and seizure would be as much against his will in the one case as in the other, and it must therefore be regarded as equally in violation of his constitutional rights.''

See also Amos v. United States, 255 U. S. 313, 65 L. Ed. 654, 41 Sup. Ct. Rep. 266; Weeks v. United States, 232 U. S. 383, 58 L. Ed. 652, 34 Sup. Ct. Rep. 341.

In Hughes v. State, 145 Tenn. 544, 238 S. W. Rep. 588, the court said: ''But in cases where the action of the governmental authorities is unlawful and violative of the con-

stitutional rights of the citizen, and directly developed and disclosed the facts of the violation of the law, the government cannot rely upon the evidence thus unlawfully obtained by its agents. The case of Amos and Gouled, *supra,* are direct authority for the proposition just stated.''

Mr. Wharton in his work on Criminal Evidence, says: ''State courts in some instances in express terms have stated their indifference to the methods used to obtain demonstrative evidence, and refuse to exclude it on the ground that it was illegally obtained. A different rule prevails in the United States Courts.''

Mr. Wharton's inference, that State courts are less mindful of constitutional guarantees than the Federal courts, seems a rather severe criticism of State tribunals of justice, but with respect to the decisions of this court it is unwarranted.

The defendant made seasonable application to the Circuit Judge for an order directing the proper officers of his court to restore to him at his dwelling, three pints of Scotch Whisky and one quart of gin, unlawfully taken from his home by E. J. Bidaman, Geo. F. Hazzard, and W. C. Goodwin, which property was then in the possession of the Sheriff of Pinellas county.

He also prayed that any evidence obtained by reason of such unlawful and illegal search of his residence, be suppressed and not allowed to be used against him on his trial. His petition was denied.

The search and seizure by which the evidence against the defendant was obtained, was made under a search warrant issued upon an insufficient affidavit by a person having no authority to do so. The search and seizure was, therefore, unwarranted and illegal, and the motion for the restoration of the property to its owner, and that it be not used against him on the trial, should have been granted.

This question was fully considered and passed upon by

the Supreme Court of the United States in Boyd v. United States, 116 U. S. 616, 6 Sup. Ct. Rep. 524. In that case there was involved the seizure of documents and papers which were used in evidence against the defendant, and while the papers were not taken by virtue of a search warrant, Mr. Justice Bradley, who delivered the opinion of the court, went fully into the question of the meaning of the 4th Amendment to the Constitution of the United States in relation to unreasonable searches and seizures, and said this: "The practice had obtained in the colonies of issuing writs of assistance to the revenue officers, empowering them, in their discretion, to search suspected places for smuggled goods, which James Otis pronounced 'the worst instrument of arbitrary power, the most destructive of English liberty, and the fundamental principles of law, that ever was found in an English law book; since they placed 'the liberty of every man in the hands of every petty officer.' This was in February, 1761, in Boston, and the famous debate in which it occurred was perhaps the most prominent event which inaugurated the resistance of the colonies to the oppressions of the mother country. 'Then and there', said John Adams, 'then and there was the first scene of the first act of opposition to the arbitrary claims of Great Britain. Then and there the child Independence was born."

In the case of Weeks v. United States, *supra,* where this question was again considered, there was seasonable application for the return of the articles unlawfully seized by an official of the United States, which was denied by the District Court, and Mr. Justice Day who rendered the opinion of the court said: "We therefore reach the conclusion that the letters in question were taken from the house of the accused by an official of the United States, acting under color of his office, in direct violation of the constitutional rights of the defendant; that having made a

seasonable application for their return, which was heard and passed upon by the court, there was involved in the order refusing the application a denial of the constitutional rights of the accused, and that the court should have restored these letters to the accused. In holding them and permitting their use upon the trial, we think prejudicial error was committed.''

The indictment charged that the defendant, ''did then and there unlawfully have in his possession intoxicating liquor, to-wit, one quart of Scotch whisky, one pint Scotch whisky, one quart of dry Gin, and one quart of Scotch whisky, broken, and the said G. L. Hart whose Christian name is to the grand jurors unknown, had previously, on to-wit, the 14th day of March A. D. 1921, been convicted in the County Court of Pinellas County, Florida, of a violation of the intoxicating liquor law, to-wit: Transporting intoxicating liquor.''

Under the decisions of this court, the indictment failed to charge a second offense of the prohibition laws in Florida. Lockmiller v. Mayo, 88 Fla. 96, 101 South. Rep. 228; Benson v. State, 88 Fla. 103, 101 South. Rep. 231.

We have fully discussed the questions raised by the assignments of error; (1) the power of the municipal judge to issue search warrants; (2) the right to introduce in evidence against a defendant, articles wrongfully taken from his home by persons acting under an illegal search warrant; (3) the sufficiency of this indictment to charge a second offense. We hold (1) that a municipal judge has no authority to issue search warrants; (2) that evidence obtained by unlawful search and seizures cannot be used against a person from whose possession they were unlawfully taken, and, (3) that the indictment fails to charge a second offense under the proposed law in Florida.

The judgment is reversed.

TAYLOR, C. J., AND ELLIS, J., concur.

WEST, J., concurs in conclusion.

WHITFIELD AND TERRELL, J. J., concur in part.

WHITFIELD, J., concurring in part.

The indictment does not allege a second offense that is punishable as a felony under the statute, Chapter 9266, Acts of 1923, therefore the judgment of conviction and sentence as for a felony should be reversed so the indictment may be quashed. A discussion of other proceedings in the trial seems to be inappropriate.

TERRELL, J., concurs.