WILLIAM HARRIS *vs.* ELLIS REALTY, INC.

Suffolk.    February 8, 1966. — April 5, 1966.

Present: WILKINS, C.J., WHITTEMORE, CUTTER, SPIEGEL, & REARDON, JJ.

Landlord and Tenant, Fire escape, Landlord's liability to tenant or one having his rights. *Negligence,* Invited person, Licensee, Fire escape.

In an action by the tenant of an apartment against his landlord for personal injuries sustained when the plaintiff fell through a hole in a fire escape platform on the wall of the apartment building as he was feeling his way in the dark at night along the platform toward the window of a neighboring apartment, the plaintiff could not recover where the evidence did not show that any invitation by the defendant landlord to the tenants to use the fire escape included such use being made of the platform by the plaintiff at the time of his injury or that he was then more than a mere licensee to whom the defendant owed no duty to keep the fire escape safe for such use.

TORT. Writ in the Superior Court dated July 24, 1956.

There was a verdict for the plaintiff at the trial before *Brogna, J.*

*Sturtevant Burr* for the defendant.

*James N. Gabriel* for the plaintiff.

CUTTER, J. Harris seeks to recover for injuries suffered when he fell to the sidewalk from a metal fire escape (at the level of the floor above the street floor) through a hole in the platform of that fire escape. This hole gave access to a vertical ladder to the sidewalk. The case is before us upon exceptions to the trial judge's refusal to direct a verdict for the defendant (Ellis) and to enter a verdict for Ellis under leave reserved. The evidence is stated in its aspect most favorable to Harris.

Harris rented an apartment above a street floor store from Ellis in 1949 through Ellis's agent. A window in the apartment opened toward a fire escape platform running across the building from apartment to apartment. At the time of the letting, "there was someone sitting on the fire escape of the apartment across from the one . . . subsequently rented." In reply to a question, the agent told Mrs. Harris that "it was permissible to use the fire escape." While the Harris family lived at the premises, use was made of the fire escape by tenants of the apartments to sit there together and to walk across the platform. The agent never objected to this use. The agent on request would remove debris from the platform.

After the 1949 letting, "a sign had been added to the front of the building." In "securing it . . . a wire had been strung across part of" the platform.

On June 23, 1956, Harris returned to the apartment at 3:30 or 4 A.M. A "tenant who lived at the other end of the fire escape came in and said that he had lost his key." Harris "went out on the fire escape for the purpose of going through the tenant's window, into his apartment and opening his door." He "grabbed the rail with his left hand and started walking to the further window." He then "slipped on something," hit the wire, "bounced back

. . . lost [his] balance and . . . went down through the hole." He knew that the hole and the wire were there. After the accident, witnesses saw a piece of canvas or linoleum, flower pots, and some pieces of wood or sticks on the platform near the hole. Mrs. Harris testified that she had asked the agent to clear up this material about a week before the accident.

We hold that a verdict should have been directed for Ellis. We think that any invitation to use the fire escape, which certainly was not a common passageway for general use (cf. *Sullivan* v. *Hamacher,* 339 Mass. 190, 193–195; *Mikaloros* v. *Stamatouras,* 348 Mass. 700, 701), did not extend to its use at night as an entrance to another apartment by a tenant feeling his way in the dark (see *Palmer* v. *Boston Penny Sav. Bank,* 301 Mass. 540, 544) to reach it. This was not a normal use of the fire escape, not shown by the evidence to have been lighted at night, nor was it a use reasonably comparable to any use which the agent had permitted or in which he had acquiesced. See *Wozniak's Case,* 299 Mass. 471, 474. The landlord was not bound to keep the fire escape safe for uses to which it was not meant to be put and for which, as a photograph in evidence indicates, it was ill suited. See *Cohen* v. *Davies,* 305 Mass. 152, 154. See also *Lally* v. *A. W. Perry, Inc.* 277 Mass. 463, 467. Cf. *Rice* v. *Rosenberg,* 266 Mass. 520, 523, where the circumstances permitted the inference that the landlord intended that the tenants should use a fire escape, not only in the event of fire, but generally in passing to and from their respective apartments. We are of opinion that no inference of such an intended use in the dark is here permissible. On this occasion, and in respect of this nocturnal use of the fire escape, Harris was at most a licensee. Ellis was under no duty to him to keep the fire escape safe for such uninvited use. See *Doran* v. *Electrical Installation Co.* 326 Mass. 523, 524. Cf. *Dunn* v. *Sammet,* 335 Mass. 162, 163; *Hubbard* v. *Palmer Russell Co.* 343 Mass. 414, 416.

The cause of Harris's fall and the nature of any article upon which he may have stumbled are matters of conjec-

ture. In the circumstances, causal connection between any debris not removed by the agent and the accident has not been established.

We need not consider whether Harris's conduct, in undertaking to travel in the dark on the fire escape, constituted contributory negligence as matter of law. See *Gambardello* v. *H. J. Seiler Co.* 335 Mass. 49, 52; *Hultberg* v. *Truex,* 344 Mass. 414, 419; *Gidge* v. *Security Realty Co.* 347 Mass. 779.

*Exceptions sustained.*
*Judgment for the defendant.*