COMMONWEALTH *vs.* DANIEL R. MURPHY.

Essex.   October 2, 1967. — January 2, 1968.

Present: WILKINS, C.J., SPALDING, CUTTER, KIRK, & SPIEGEL, JJ.

*Dwelling House.   Building.   Fisheries.   Lobster.   Search and Seizure.
Trespass.   Public Officer.   Arrest.   Words,* "Dwelling house."

A detached garage located close to a single family house on premises en-
    closed by a fence at the rear and on both sides was within the "dwel-
    ling house" exemption in G. L. c. 130, § 9.   [437]
Under G. L. c. 21, § 6D, as amended by St. 1964, c. 524, § 4, a natural re-
    source officer was not a trespasser in entering and passing over private
    property in the performance of his duties.   [437]
Mere observation by a natural resource officer of short lobsters in a
    garage in plain view through a partially opened door thereof while he
    was lawfully on the premises did not constitute a search by him.   [438]
After a natural resource officer lawfully on certain premises had observed
    short lobsters in the possession of a person present there, the officer
    legally arrested that person without a warrant under G. L. c. 130, § 9,
    and legally seized the lobsters as an incident of such arrest.   [438–439]

COMPLAINT received and sworn to in the Central District
Court of Northern Essex on July 10, 1964.

Upon appeal to the Superior Court, questions of law were
reported by *Johnson,* J., a District Court judge sitting under
statutory authority.

*George Karelitz* for the defendant.

*Peter F. Brady,* Assistant District Attorney, for the Com-
monwealth.

SPALDING, J.   A complaint charged the defendant with
having in his possession 438 short lobsters in violation of
G. L. c. 130, § 44, as amended by St. 1963, c. 300, § 2.   Prior
to a trial in the Superior Court the defendant made a mo-
tion to suppress the evidence, which consisted of lobsters
seized in the defendant's garage by officers of the law.   The
motion was denied.   The judge, being of opinion that three
questions of law were involved which were "so important
or doubtful" as to require a decision of this court before

trial, reported them. The questions reported are: "1. Whether or not the search and seizure involved in this case was legal. 2. Whether or not G. L. c. 130, § 9, is constitutional. 3. Whether or not a single family residence and garage occupied by the defendant and surrounded on three sides by a fence constitutes a dwelling house." No evidence was introduced in connection with the motion to suppress but a statement of agreed facts was submitted, which incorporated by reference three photographs of the defendant's premises.

We summarize the facts as follows: On July 9, 1964, the defendant and his wife occupied a single family house at 20 Willie Street, Haverhill. A garage, in the rear of but not physically attached to the house, was at the end of a driveway fifty to seventy-five feet in length which ran to Willie Street. A fence enclosed both sides and the rear of the premises.

As a result of information obtained from "an informer and investigation over a period of time, Natural Resource Officers had the premises under surveillance for approximately three weeks." On July 9, 1964, one Crossman, a natural resource officer, and a fellow officer, drove to Willie Street about 6:30 P.M. and from their car observed the defendant's premises. About 9:30 P.M. Crossman saw a light in the garage and saw a man, then unknown to him, "holding up a burlap bag." It was dark and raining and he could not see what was in the bag. He went to the first street to the right of the defendant's premises, and then proceeded through a field and over a fence and through some brush until he "got to where he recognized the area as being the house of the defendant." He "had nobody's permission to go through any of the yards" and had not asked for such permission; he assumed that he had a right to do what he did. From the rear Crossman could not look into the garage and had "no knowledge of what was in there, except . . . a man with a burlap bag."

Crossman then looked through a side window into the garage where he saw three men, "one of whom was the man

with the burlap bag." Remaining there for ten to fifteen minutes, he also observed "a fish box and open paper bags standing upright side by side on the garage floor." Crossman then left the premises by the same route he had entered. He, together with three other natural resource officers, walked down the driveway from Willie Street and entered the garage through a partially opened door; they "had to pull open the door further to gain entrance." As Crossman "stood in the driveway . . . just prior to touching the door he could see some lobsters on the floor which in . . . [his] opinion . . . were under the minimum legal length." Upon entering the garage the officers arrested the defendant. Bags of lobsters were then emptied onto the garage floor. When measured and counted, there were 438 lobsters which were below the legal limit in length. The man first observed holding the burlap bag was the defendant.

Of the questions reported the third seems to us to be the most important and we shall discuss it first. That question is, "Whether or not a single family residence and garage occupied by the defendant and surrounded on three sides by a fence constitutes a dwelling house."

General Laws c. 130, § 9, as amended by St. 1964, c. 524, § 8, provides in part as follows: "The director [of the division of marine fisheries], his assistants, a natural resource officer or deputy or a member of the state police may, without a warrant, search any boat, vessel, fish car, bag, box, locker, package, crate, any building other than a dwelling house, any motor vehicle as defined in section one of chapter ninety, or other vehicle, or any other personal property in which he has reasonable cause to believe, and does believe, that fish taken, held, kept, possessed, transported or held for transportation or sale in violation of law, may be found, and may seize any such fish there found, and may seize any boat, vessel, fish car, bag, box, locker, package, crate, any motor vehicle, as defined in section one of chapter ninety, or other vehicle, or any other personal property used in a violation of the laws relative to marine fisheries and hold the same for

forfeiture. Any such person or officer may arrest without a warrant any person found violating any provision of this chapter."[1] The statute expressly exempts a "dwelling house" from search without a warrant even though there be reasonable cause to believe that fish are there held in violation of law.

As the statute offers no definition of "dwelling house," we refer to the common law. It would appear that most of the common law cases bearing on the subject deal with the offences of burglary or arson. In *Devoe* v. *Commonwealth,* 3 Met. 316, the court per Shaw, C.J., said at page 325, "By the common law, every house for the dwelling and habitation of man is taken to be a mansion house, wherein burglary may be committed. . . . The mansion house not only includes the dwellinghouse, but also the outhouses, such as barns, stables, cow-houses, dairyhouses, and the like, if they be parcel of the messuage, though they be not under the same roof, or joining contiguous to it. . . . Any outhouses, within the curtilage or same common fence as the mansion itself, must be considered as parcel of the mansion." See *Commonwealth* v. *Barney,* 10 Cush. 480; *Commonwealth* v. *Certain Intoxicating Liquors,* 140 Mass. 287; 4 Blackstone, Commentaries (1st ed.) pp. 220, 224–225; 1 Hale, P. C. 558, 567; 1 Hawk. P. C. cc. 17 and 18.

In the case at hand the agreed facts and the exhibits make clear that the garage is located close to the rear of the house, and fifty to seventy-five feet from the street. Both garage and house are partially surrounded by a fence which passes around the rear and two sides. Thus under the decisions cited above the garage is located within the curtilage. The words "dwelling house" have more recently been discussed in connection with questions of search and seizure. It has been held in such cases that buildings within the curtilage are entitled to the same protection as the dwelling house itself. See *Roberson* v. *United States,* 165 F. 2d 752

---

[1] The "fish" mentioned in § 9 are defined in another section as "any animal life inhabiting the ocean or its connecting waters including any crustacean or marine fish, whether free swimming or free moving . . . ." G. L. c. 130, § 1 (as amended by St. 1945, c. 98, § 1).

(6th Cir.) (smokehouse associated with dwelling and located inside yard fence is part of the curtilage and thus protected); *Walker* v. *United States,* 225 F. 2d 447 (5th Cir.) (barn held to be protected because within the curtilage); *Care* v. *United States,* 231 F. 2d 22 (10th Cir.), cert. den. 351 U. S. 932 (Fourth Amendment applies to buildings within the curtilage which may include garages, barns, smokehouses, chicken houses, or similar buildings); *Rosencranz* v. *United States,* 356 F. 2d 310 (1st Cir.) (same).

In the light of the common law definitions of a dwelling in the burglary and arson cases and their extension to cases involving searches and seizures, we are of opinion that the defendant's garage falls within the "dwelling house" exemption contained in § 9 of G. L. c. 130.

As § 9 does not authorize the search of the garage without a warrant, there is no need to answer the second question reported, namely, whether § 9 is constitutional. We proceed, then, to the first question which asks "[w]hether . . . the search and seizure involved in this case was legal."

The defendant urges that the actions of the natural resource officers constituted a trespass upon his premises which, along with their entry into the defendant's garage without a warrant, violated rights secured under the Fourth and Fifth Amendments to the United States Constitution.

We need not decide whether a simple trespass would render inadmissible the evidence sought to be suppressed (see *United States* v. *Lewis,* 227 F. Supp. 433, 436, and cases cited [S. D. N. Y.]) because the officers were not trespassers. They were authorized, in the performance of their duties, to "enter upon and pass through or over private property or lands whether or not covered by water." G. L. c. 21, § 6D, as amended by St. 1964, c. 524, § 4. In *Thurlow* v. *Crossman,* 336 Mass. 248, this statute was exhaustively discussed, and it was held that a resource officer by virtue of the statute could enter upon privately owned land in the performance of his duties without committing a trespass. What was said in the *Thurlow* case is pertinent here. "It is

held generally at common law that public officers may legally enter upon land privately owned when necessary to carry out their official duties. Instances in point are entry by commissioners to survey the bounds of a public landing place, by selectmen to run boundary lines and renew marks, and by county commissioners to view and survey proposed highways. *Winslow* v. *Gifford,* 6 Cush. 327. Lawful entry may be made 'to save goods which are in jeopardy of being lost or destroyed by water, fire, or any like danger' . . . to prevent the spread of fire . . . and to make arrests . . . . A police officer who enters upon private premises in good faith in the performance of his official duty to protect life and property and to preserve the peace is not a trespasser. . . . The Legislature has frequently exercised its· police power by expressly authorizing entry upon private land in aid of law enforcement. See G. L. (Ter. Ed.) c. 94, §§ 35, 60 (to inspect milk and milk products); G. L. (Ter. Ed.) c. 111, § 9 (to inspect food and drugs); G. L. (Ter. Ed.) c. 148, §§ 4, 5 (to inspect fire hazards); G. L. (Ter. Ed.) c. 129, § 7 (to inspect animals); G. L. (Ter. Ed.) c. 159, § 27 (to inspect premises of a common carrier); G. L. (Ter. Ed.) c. 138, § 63, as appearing in St. 1936, c. 368, § 13 (to inspect premises licensed to sell alcoholic liquors); G. L. (Ter. Ed.) c. 140, § 201 (to inspect premises of a common victualler and other licensed premises)."

The officers were lawfully on the defendant's premises when short lobsters were observed through the partially opened garage door. To look at what is in plain view cannot be called a search and does not violate either the Fourth or Fifth Amendment to the United States Constitution. See *Commonwealth* v. *LaBossiere,* 347 Mass. 384 (looking in an automobile); *Ker* v. *California,* 374 U. S. 23, 43; *United States* v. *Horton,* 328 F. 2d 132, 135 (3d Cir.), and cases cited. We need not decide whether the officers had probable cause to arrest the defendant before the short lobsters were observed, because once they were seen the crime of illegal possession had taken place in the officers' presence and the statute authorized them to arrest him without a warrant and

to seize the lobsters. G. L. c. 130, § 9.[1] The seizure of the lobsters was incidental to a lawful arrest. *Commonwealth* v. *Holmes*, 344 Mass. 524, 525. *Commonwealth* v. *Jacobs*, 346 Mass. 300, 310. *United States* v. *Rabinowitz*, 339 U. S. 56, 61.

To recapitulate, our answers to the reported questions are: (1) The seizure of the lobsters was lawful; (2) as stated above, we do not deem it necessary to determine the constitutionality of G. L. c. 130, § 9; and (3) the garage where the lobsters were seized falls within the "dwelling house" exemption contained in § 9.

The case is remanded to the Superior Court for further proceedings consistent with this opinion.

*So ordered.*

---

[1] Apart from § 9 the officers would have had no right to make an arrest without a warrant, for the offence (G. L. c. 130, § 44) was a misdemeanor, and, although committed in their presence, did not involve a breach of the peace. *Commonwealth* v. *Wright*, 158 Mass. 149, 158–159. *Commonwealth* v. *Gorman*, 288 Mass. 294, 297. *Commonwealth* v. *Mekalian*, 346 Mass. 496, 497.