Commonwealth vs. Samuel Thomas.

Suffolk.   February 3, 1971. — March 2, 1971.

Present: Tauro, C.J., Spalding, Cutter, Spiegel, & Braucher, JJ.

*Search and Seizure.*

A search by narcotics officers of the common cellar of an apartment build-
ing, and their seizure of heroin found therein, without an arrest or
search warrant or effort to obtain them, and without permission to
enter the building, were not invalid so as to make error the denial of
a motion to suppress by a defendant who lived in an apartment in the
building and was indicted for violations of G. L. c. 94, §§ 212, 212A,
where warranted findings by the trial judge included findings that one
night the officers were told by an informer that the defendant "was
taking a trip" and that "some stuff was secreted in the cellar" of the
building, that the officers soon went there, found a rear door "open an
inch or so," pushed it "open further" and went into the cellar, dis-
covered in its ceiling, and replaced, a paper bag containing heroin,
watched the defendant enter the cellar and put an "unidentified ob-
ject" among the joists and look into the paper bag, and that the de-
fendant was then arrested and the heroin seized.

Indictments found and returned in the Superior Court
on March 10, 1969.

Certain motions were heard by *Forte, J.*

*Chester C. Paris* for the defendant.

*Thomas F. Reardon,* Assistant District Attorney, for the
Commonwealth.

Cutter, J.   Thomas was found guilty by a Superior
Court judge, sitting without a jury (after Thomas's waiver
of jury trial) on indictments charging him with (a) unlawful
possession of heroin, G. L. c. 94, § 212, and (b) possession of
heroin with intent to sell, G. L. c. 94, § 212A.   Prior to trial
Thomas filed a motion to suppress evidence and a "motion
for appropriate relief," each supported by an affidavit.
These motions were denied.   The case is before us on

Thomas's bill of exceptions, which set forth evidence which would warrant the judge in making the following findings.

Detective Currier, a Boston police officer, together with Detective Linsky, assigned to the narcotics unit, and Detective Simmons, learned from an informant about 10 P.M. on January 23, 1969, that Thomas "was taking a trip to Worcester" and "that some 'stuff' was secreted in the cellar of . . . 19 Carson Street, Dorchester." About midnight the three officers went to 19 Carson Street, a three-story building containing six apartments. Thomas "live[d] in an apartment on the third floor." In the rear of the building there is a' parking lot for the tenants. The officers had neither an arrest warrant nor a search warrant and made no attempt to obtain a warrant.

The officers found the front door locked. A rear door was "open an inch or so." They "pushed it open further and went inside." They obtained no permission from the owner, the superintendent, or any other person to go on the property, to enter the building, or to make a search.

In the cellar, "there were two washing machines, two dryers, rubbish barrels, electric meters, a hot-water heater, and a chair." After "searching the cellar for . . . ten to fifteen minutes . . . Officer Currier looked into an area behind a facia board between the cellar ceiling and the floor boards of the apartment above." This "area . . . was completely exposed without insulation." There Detective Currier found a brown paper bag, the edge of which was visible. In the bag there were three cardboard boxes, containing packages of foil covering bags of what (when tested there by the officers) proved to be heroin. The bag was replaced where it had been found. At the time of its discovery, the officers did not know who owned the heroin or who had placed it there.

One of the officers removed the police automobile from the front of the building, and they concealed themselves, one in a small storage area below the rear entry of the building and one behind an automobile in the parking area. They

commenced surveillance of the premises. Thomas drove into the parking lot about 2:30 A.M., went to an upper floor and (about 2:45 A.M.) "came down into the cellar." He "got up on a chair and put an unidentified object . . . among the [first] floor joists." He was observed looking into the brown paper bag which the police officers already had found. The officers arrested Thomas in the cellar. No heroin was found on his person. Following the arrest, the officers removed two packages from the floor joists above the cellar. They contained 1,075 glassine bags of heroin, later admitted in evidence at trial.

"The cellar of the apartment building, the washing machines, and dryers were for the use of the tenants and not for use by the general public." The trial judge found "that the officers did not break and enter the . . . building as the door . . . was opened . . . but that they did commit a trespass."

1. The report to narcotics officers by an informer that "stuff" was stored in a particular place reasonably imported that illegal narcotics were there stored. The offences here charged, viz. possession of heroin and possession of heroin with intent to sell, obviously are extremely serious in their impact upon the public safety and health. Reasonable suspicion of such offences called for intelligent, prompt, and effective police action, comparable to that expected of the police in serious crimes of violence. Cf. G. L. c. 111, § 9 (see also c. 94, §§ 35, 60), giving drug inspectors authority to enter certain premises in aid of law enforcement; *Thurlow* v. *Crossman*, 336 Mass. 248, 250–252. See also *Commonwealth* v. *Murphy*, 353 Mass. 433, 437–438; *Carlisle* v. *Department of Pub. Util.* 353 Mass. 722, 723–725. Even if the information available to the officers was not sufficient to amount to probable cause, it was their clear duty to make prompt, reasonable investigation. Cf. *Ballou* v. *Massachusetts*, 403 F. 2d 982, 984–985 (1st Cir.), cert. den. 394 U. S. 909.

2. The area where these large quantities of heroin were found (in packages of a type strongly indicating that they

were held for sale) was not in Thomas's control.[1]  It was a common area, available to each tenant of the building, in common with the others, for washing clothes and perhaps for limited other purposes.  Thomas did not have any exclusive control of any part of it.  It is obvious that the cellar remained subject to the owner's control.  See *McCarthy* v. *Isenberg Bros. Inc.* 321 Mass. 170, 171–173, and cases collected in Hall, Massachusetts Law of Landlord and Tenant (Adams-Wadsworth 4th ed.), §§ 199–204; Schwartz, Lease Drafting in Massachusetts, §§ 3.17, 3.19.  See also *Mikaloros* v. *Stamatouras*, 348 Mass. 700, 701.  The cellar was not a part of Thomas's apartment or home.  There he had no right to privacy, although (with other tenants) he could use it appropriately.  The landlord's invitation to Thomas, however, to use the cellar, and his easement or license to do so plainly did not extend to use of the cellar for storing contraband narcotics.  See *Harris* v. *Ellis Realty, Inc.* 350 Mass. 520, 522.

3. We assume, as the trial judge found, that the three police officers committed a trespass in entering the cellar through the open (and not merely unlocked) door.  Cf. *Sabbath* v. *United States*, 391 U. S. 585, 590.  This entry, however, was a trespass against the building owner (who is not here objecting), not against Thomas.[2]  It did not invade an area within the "curtilage" of Thomas's apartment.  See *United States* v. *Miguel*, 340 F. 2d 812, 814 (2d Cir.), cert. den. 382 U. S. 859.  In a modern urban multifamily apartment house, the area within the "curtilage" is necessarily much more limited than in the case of a rural

---

[1] We assume (because possession of the heroin was an element of the offence charged), without deciding, that Thomas had standing to press his motions. *Jones* v. *United States*, 362 U. S. 257, 263.  *Simmons* v. *United States*, 390 U. S. 377, 389–390.  It does not follow, however, that any interest in the searched premises, which he may have had, is necessarily sufficient to make a search of those premises unlawful as to him and to afford him protection under the Fourth Amendment.

[2] Some investigation by police officers of an apartment house cellar door, found open at midnight, would have been prudent in any event.  With the informant's report a check of the cellar, not involving forcible entry, was reasonable, at least in the absence of prohibition by the building owner or his representative.

dwelling subject to one owner's control. Cf. *Commonwealth* v. *Murphy*, 353 Mass. 433, 436–437; *Care* v. *United States*, 231 F. 2d 22, 25 (10th Cir.), cert. den. 351 U. S. 932; *McDowell* v. *United States*, 383 F. 2d 599, 603 (8th Cir.). In such an apartment house, a tenant's "dwelling" cannot reasonably be said to extend beyond his own apartment and perhaps any separate areas subject to his exclusive control.

The search following the entry was not rendered illegal because it was a trespass against the owner of the building. Such activity (e.g. arrest or search) in a common area, following a trespass against the owner, has been held valid. See *United States* v. *Buchner*, 164 F. Supp. 836, 837–839 (D. D.C.), affd. 268 F. 2d 891 (Ct. App. D.C.) cert. den. 359 U. S. 908; *United States* v. *St. Clair*, 240 F. Supp. 338, 339–341 (S.D. N.Y.); *People* v. *Terry*, 70 Cal. 2d 410, 426–427; *People* v. *Seals*, 263 Cal. App. 2d 575, 577–580.[3]

4. The record does not show that the officers could have obtained a warrant either for a search or for Thomas's arrest.[4] Once the significant quantity of heroin had been discovered (because of the accident of the open door to the common cellar area), the officers prudently watched that area to apprehend the owner of the heroin. It was appropriate to guard the heroin (lest it be taken away or destroyed), rather than to leave the premises to obtain a warrant. The officers dealt sensibly with the emergency situation by reasonably balancing (a) the great public interest in arresting a substantial vendor of illicit hard drugs (and

[3] See also *Commonwealth* v. *Dirring*, 354 Mass. 523, 532–533; *Giacona* v. *United States*, 257 F. 2d 450, 456 (5th Cir.), cert. den. 358 U. S. 873; *Teasley* v. *United States*, 292 F. 2d 460, 464–465 (9th Cir.); *United States* v. *Minker*, 312 F. 2d 632, 634 (3d Cir.), cert. den. 372 U. S. 953; *United States* v. *Horton*, 328 F. 2d 132, 135–136 (3d Cir.); *Marullo* v. *United States*, 328 F. 2d 361, 363–364 (5th Cir.), cert. den. 379 U. S. 850; *Ponce* v. *Craven*, 409 F. 2d 621, 624, 627 (9th Cir.), cert. den. 397 U. S. 1012; *United States* v. *Polk*, 201 F. Supp. 555, 557–559 (N.D. Cal.); *United States* v. *Lewis*, 227 F. Supp. 433, 435–437 (S.D. N.Y.); *United States* v. *Perkins*, 286 F. Supp. 259, 261–264 (D. D.C.); *Commonwealth* v. *Frye*, 433 Pa. 473, 478. Cf. *Whitley* v. *United States*, 237 F. 2d 787, 788 (Ct. App. D.C. — porch entered by the police forcibly through a window); *Hurst* v. *People*, 211 F. Supp. 387, 389–390, 393–394 (N.D. Cal.); *State* v. *Dias*, 52 Hawaii, 100; *People* v. *Williams*, 24 App. Div. 2d (N.Y.) 274, 275–276.

[4] The information given by the informant probably has not been set forth fully in the record.

preventing distribution of those drugs) against (b) the trivial trespass (against the building owner) through an open door on an apartment house common area without a warrant. See *United States* v. *Soyka,* 394 F. 2d 443, 453 (2d Cir.). See also *Commonwealth* v. *Ballou,* 350 Mass. 751, 755–757, cert. den. 385 U. S. 1031.

*Exceptions overruled.*