COMMONWEALTH vs. MICHAEL ZDANOWICZ.

Essex. June 10, 1981. — July 8, 1981.

Present: HALE, C.J., GRANT, & BROWN, JJ.

*Threshold Police Inquiry. Search and Seizure. Lobster. Fisheries.*

A natural resources officer who, while watching four men unload a boat, observed one of the men attempting to place a paper bag over a bucket of lobsters before taking it off the boat, had reasonable cause to believe that the man was attempting to hide illegally taken lobsters and was warranted in asking to inspect the lobsters in the bucket; and, having measured and found some of the lobsters in the bucket short of the minimum length and having observed another man on the boat apparently attempting to dump the contents of a basket into the water, the officer was warranted in boarding the boat and seizing other illegally taken lobsters. [233-235]

COMPLAINT received and sworn to in the First Essex Division of the District Court Department on May 5, 1979.

On appeal to the jury session, a motion to suppress evidence was heard by *Furnari*, J.

*Nancy B. Salafia*, Assistant District Attorney, for the Commonwealth.

*Esther M. Stevens* for the defendant.

HALE, C.J. This is an appeal by the Commonwealth under Mass.R.Crim.P. 15(a)(2), 378 Mass. 882 (1979), from the allowance of the defendant's motion to suppress evidence against him on a charge of possession of undersized (short) lobsters in violation of G. L. c. 130, § 44. We reverse.

The only testimony presented to the court at the hearing on the motion to suppress was that given by the arresting officer, a natural resources officer employed by the Department of Environmental Management, division of law enforcement. He testified that on Sunday morning, April 22,

1979, while not on duty and not in uniform, he was on a picnic at the Salem waterfront with family and friends. While there he observed a boat with four men aboard tie up to Derby Wharf. The officer was standing on the wharf above the boat, which was stern to and fifteen to twenty feet away from him. He observed one of the men take a five-gallon bucket containing lobsters from the boat to a pickup truck and place the bucket on it.

The officer then went to the truck and noted that the lobsters were of good size and that the claws were secured by elastic bands. He then returned to his original position and observed the defendant's brother Thomas attempting to put a paper bag over a plastic bucket containing lobsters. The bag ripped, and Thomas then folded and placed it on top of the lobsters. He then walked by the officer and put the bucket on the back of the truck. As it appeared "strange" to the officer that the lobsters were covered with paper, he approached Thomas, identified himself as a natural resources officer and told him that he would "like to inspect his lobsters."[1] Thomas muttered an oath and put the bucket on the ground. The officer measured three lobsters and found them to have shells less than three and three-sixteenths inches, the minimum legal length.[2] He then read Thomas "his rights." At that time he observed the defendant, who had remained on the boat, "grab a wooden peach basket from the deck of the boat and go to the side of the boat, opposite [to the] side of the pier." As it appeared to the officer that the defendant was going to dump something overboard, the officer "yelled to him to put the basket back in the boat, not to dump anything over." The officer boarded the boat and observed that there were unbanded lobsters in the basket that looked small to him. He also saw a lobster emerge from a black plastic trash bag. He then measured

---

[1] The judge's finding on this point was that the officer "read that person his rights and demanded to inspect the pail." This variation does not affect the result we reach.

[2] See G. L. c. 130, § 44, as amended by St. 1977, c. 69, § 4.

all of the lobsters and found that there were seven shorts in Thomas' bucket and seventeen more in the peach basket and plastic bag, a total of twenty-four. No objection had been made to the officer's boarding the boat.

The judge's recitation of facts found was not as detailed as the testimony described here, but it is clear from the statements made by him at the conclusion of the hearing and in his written findings that he believed the officer's testimony and accepted it as factual. There is thus no need for us to remand the case for further findings, as we may consider the facts of the case to be as set forth in the officer's testimony.

The judge recognized that under G. L. c. 130, § 9 (as most recently amended by St. 1964, c. 524, § 8), a natural resources officer may, without a warrant, search, among other things, a boat, bag or box "in which he has reasonable cause to believe, and does believe, that fish taken, held, kept, possessed, transported or held for transportation or sale in violation of law, may be found."[3] He ruled that the officer had to have "probable cause to arrest at the moment he stopped the defendant's brother and investigated the contents of the plastic pail the brother had been carrying. *Beck* v. *Ohio*, 379 U.S. 89 (1964)." He reasoned from that point, and he ultimately concluded with a statement that "there was no probable cause to search the defendant's brother. From that moment on the evidence and information obtained was illegally obtained and could not be used in a criminal prosecution of this defendant." We are of opinion that the judge was in error.

One of the duties of a natural resources officer is to police lobstering. G. L. c. 21, § 6A and 6B, as most recently amended by St. 1975, c. 706, §§ 51 and 52.[4] A natural resources officer has the right to make an investigative inquiry "where suspicious conduct gives the officer reason to suspect

---

[3] Lobsters are included within the category of fish. G. L. c. 130, § 1.

[4] A person must be licensed to engage in lobstering. G. L. c. 130, §§ 37 and 38.

that a person has committed, is committing, or is about to commit a crime." *Commonwealth* v. *Silva*, 366 Mass. 402, 405 (1974). *Commonwealth* v. *Riggins*, 366 Mass. 81, 86 (1974). *Terry* v. *Ohio*, 392 U.S. 1, 22 (1968). To justify an investigative inquiry the officer "must be able to point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion." 392 U.S. at 21. Those inferences may be drawn in the light of the officer's special experience, even though the same inferences from identical facts might not be drawn by an inexperienced person. *Commonwealth* v. *Lotfy*, 8 Mass. App. Ct. 126, 131-132 (1979). *Commonwealth* v. *Blatz*, 9 Mass. App. Ct. 603, 604-605 (1980). On the specific facts that the officer testified that he observed, it was reasonable for him to conclude that Thomas had seen him look at the first bucket of lobsters taken off the boat and that Thomas' "strange" actions in covering up the bucket of lobsters with a paper bag had led the officer to the eminently reasonable conclusion that Thomas was attempting to hide some illegally taken lobsters. Indeed, it would be difficult to conceive what other purpose would be served by the paper cover.[5] The officer's approach to Thomas and his request to inspect the lobsters in the bucket after first identifying himself as a natural resources officer was not "inconsiderate or unfair law enforcement action which should require suppression of relevant evidence in order to ensure proper official conduct in the future." *Commonwealth* v. *Colella*, 360 Mass. 144, 151 (1971).

Having measured and found three of the lobsters short of the minimum length, and having read Thomas his "rights," the officer, from what he then observed the defendant doing with the peach basket, was warranted in concluding that the defendant had seen what had gone on with Thomas and

---

[5] We are not impressed by the defendant's argument that the paper could have been used to shade the lobsters from the sun, particularly where no such precautions had been taken for the legal sized lobsters in the first bucket off the boat.

had concluded that they had been caught red handed and was attempting to get rid of other "shorts." A conclusion that lobsters were possessed in violation of the law was not only reasonable but was virtually compelled, and the officer was empowered by G. L. c. 130, § 9, to board the boat, look for, and seize the lobsters.[6] See *Commonwealth* v. *Murphy*, 353 Mass. 433, 438 (1968).

The order suppressing the evidence is reversed, and the case is remanded to the six-man jury session of the District Court Department for further proceedings.

*So ordered.*

---

[6] We do not suggest that the officer could not have acted as he did without the benefit of that statute.