**State v. Cancel**
*[Cite as 4 AOA 322]*

*Case No. 56727*
*Cuyahoga County, (8th)*
*Decided June 28, 1990*

*John T. Corrigian, Prosecuting Attorney of Cuyahoga County, James Valentine, Assistant, The Justice Center, 1200 Ontario, Cleveland, Ohio 44113, for Plaintiff-Appellee.*

*Michael A. Wypasek, 605 Terminal Tower, Cleveland, Ohio 44113-2203, for Defendant-Appellant.*

KRUPANSKY, J.

On June 8, 1988 defendant Enero Cancel was indicted for possession of cocaine in less than bulk amount in violation of R.C. 2925.11, drug abuse, in case number CR-227194. Defendant filed a motion to suppress the cocaine seized from his person on July 13, 1988. A hearing was held on the motion to suppress the evidence on August 26, 1988, after which defendant's motion was denied. Defendant entered a plea of no contest to the charge and was sentenced on October 18, 1988 to one and one-half years in the Ohio Refor-matory, which sentence was suspended. Defendant was placed on two years probation. Defendant timely appeals.

The relevant facts from the testimony at the suppression hearing follow:

Sergeant Robert Hunt of the Second District Vice Unit of the Cleveland testified that on April 19, 1988 at approximately 7:30 p.m., his unit and the police Strike Force were working in concert to execute a search warrant for the premises located at 5415 Bridge Avenue, Apartment 2, its curtilage and persons present. Apartment two was the first apartment on the right hand side of the first floor. Hunt testified the warrant issued due to the many complaints the department received in connection with drug sales in front of the Bridge Avenue building. Hunt testified he had personally witnessed drug transactions in the past at the Bridge Avenue address. Hunt related that the usual pattern of drug sales followed two scenarios, *viz.*, (1) a person would approach an automobile parked at the curb in front of the address, receive cash and exchange drugs immediately or, (2) a person would take the cash from the vehicle occupant and return to the building before reappearing with the drug quantity requested.

On the evening in question, Hunt testified he was accompanied by several identifiable police vehicles including some black and white zone cars as well as some unmarked vehicles. Hunt saw defendant standing next to an automobile parked at the curb immediately in front of the Bridge Avenue apartment building, when all the above police vehicles converged to execute the warrant. Defendant immediately walked away from the vehicle at which he was standing and started for the front door of the apartment building described in the warrant as soon as the police vehicles converged on the area.

Defendant was within five feet of the entrance door when Hunt stopped and searched him. Hunt confiscated a matchbook containing 1.03 grams of cocaine. Defendant's sole assignment of error follows:

"WHETHER THE EVIDENCE SEIZED FROM DEFENDANT-APPELLANT SHOULD HAVE BEEN SUPPRESSED?"

Defendant's sole assignment of error lacks merit.

Defendant argues the cocaine seized from defendant's person should have been suppressed. Specifically, defendant maintains:

"(1) Officer Hunt had no probable cause for a search,

"(2) Officer Hunt was not conducting a *Terry* "pat down" but was looking for drugs,

(3) defendant's proximity to a high drug problem area is not sufficient articulable facts to justify the officer's reasonable suspicion that defendant was engaged in criminal activity."

Defendant's argument is unpersuasive.

The fourth amendment to the United States Constitution provides that people are protected against *unreasonable* searches and seizures. Ohio law provides that any person may be arrested for a felony without a warrant "upon reasonable cause to believe that a felony has been committed and reasonable cause to believe defendant committed it." R.C. 2935.04. Further, when the arrest is conducted by a police officer, the arresting officer at the moment of arrest, under the facts and circumstances within the officer's knowledge must be sufficient to warrant a prudent man in believing that (1) the person to be arrested had committed or was committing an offense, or (2) that evidence was linked to a crime and was presently in the place to be searched. *Beck v. Ohio* (1964), 379 U.S. 89.

Mere furtive movements and presence in a bad area not sufficient to rise to the level of probable cause. *State* v. *Hill* (1977), 52 Ohio App. 2d 393. A police officer may make an investigative stop of an individual where, under the totality of the circumstances, the officer has a reasonable basis to suspect criminal activity. Cf. *State* v. *Bobo* (1988), 37 Ohio St. 3d 177, 180-181 (listing seven factors to consider when inquiring into totality of the circumstances.)

Defendant's reliance on *Brown* v. *Texas* (1979), 443 U.S. 47 is misplaced. In *Brown*, the defendant was merely *in the neighborhood* where drugs were bought and sold. That is not supported by the facts of the case *sub judice.*

The police officer, Sergeant Hunt, a seasoned veteran with twenty-six years on the force, testified surveillance revealed 5415 Bridge avenue was a drug house. Sergeant Hunt described a drug buy as follows:

"Q. Did you have occasion to conduct any surveillance of that address?

"A. Yes.

"Q. Did you see evidence of drug sales at that address?

"A. Yes. We have made prior arrests in front of that building in which persons walk up to the automobile that pulls up there; either money is transacted and then the person leaves and go into the building at 5415 Bridge, returns and hands something into the automobile; on other occasions money and whatever they are handing into the automobile is transacted right there."

Sergeant Hunt further testified the defendant's behavior comported with that of a drug transaction. Defendant was directly in front of the Bridge Avenue address at an automobile parked at the curb. Upon the arrival of the police en masse, defendant turned around and headed for the entrance to the building. At this juncture, Sergeant Hunt testified he reasonably believed a drug transaction had taken place. Considering Hunt's twenty-six years experience, the search warrant for the Bridge Avenue building and the fact defendant was within the route of trade, i.e., the path from a parked vehicle to within five feet of entering said building, the search of defendant was entirely reasonable. Coupled with Sergeant Hunt's twenty-six years experience as a police officer, his previous surveillance of 5415 Bridge Avenue a known drug house and defendant's *modus operandi*, it was reasonable under the totality of the circumstances for Sergeant Hunt to believe; (1) a crime was in progress and/or (2) a drug transaction had just been completed. See *Beck, supra.* Therefore, since probable cause is based on an objective standard of reasonableness, Officer Hunt had probable cause to arrest defendant. *id.* Officer Hunt admits he did not conduct a pat down of defendant but a search based on probable cause.

Furthermore, in the case *sub judice*, Officer Hunt testified he was armed with a search warrant for 5415 Bridge Avenue, Apt. 2, its curtilage and persons present.

A warrant for the search of premises implicitly confers a limited authority on police officers to conduct investigative detentions of individuals found on the premises who can be reasonably *connected* to the property. State v. *Schultz* (1985), 23 Ohio App. 3d 130, 135, 136. More specifically, law officers executing a search warrant for a known drug house may detain individuals observed leaving the house who may be reasonably connected to drug activity. *State* v. *Bridges* (Oct. 5, 1989), Cuyahoga App. No. 55954, unreported, citing *State* v. *Cain* (Aug. 19, 1986), Montgomery App. No. CA-9384, unreported; *State* v. *Prince* (May 15, 1985), Clermont App. No. CA84-09-063, unreported. In the case *sub judice*, when a warrant is executed for a known drug house it is equally as reasonable to detain one who has been seen behaving at an automobile as if a transaction had taken place, who seeks to quickly reenter the premises. *Bridges, supra.*

The police surveillance identified 5415 Bridge Avenue as a drug house. Illegal drug purchases at the house had been witnessed by the police and prior arrests made. Sergeant Hunt had twenty-six years experience. Hunt observed defendant at an automobile and, as police pulled up, defendant quickly walked to within five feet of the dwelling for which the warrant was issued. The police had probable cause to search defendant.

Probable cause exists when the facts and circumstances within the arresting officer's knowledge are sufficient to warrant a prudent man in believing that an offense has been committed. *Beck, supra.* Where, as here, the police observed the following:

"(1) defendant was in front of a known drug house,

"(2) defendant was conversing with an occupant of a car in front of said house,

"(3) defendant left the car quickly to re-enter the premises when police arrived, and

"(4) the police were armed with a warrant for the premises. Presented with these facts, the police had probable cause to search defendant. The search of defendant was reasonable under the totality of the circumstances, hence, there was no violation of defendant's fourth amendment rights under the United States Constitution."

Therefore, under either the warrant or probable cause requirement of an arrest and search, the search of defendant was proper. Defendant's sole assignment of error is without merit and overruled.

*Judgment affirmed.*

PATTON, C.J., concurs.
NAHRA, J., dissents.

NAHRA, J., dissenting.

I respectfully dissent since I would hold that Officer Hunt did not have probable cause to search Cancel. Although the trial court's decision was based on probable cause rather than the search warrant, I would also hold the scope of the warrant did not extend the search of Cancel since the majority seems to proceed on both grounds.

Officer Hunt's observations of Cancel did not warrant a prudent man in believing a felony was in progress. Hunt testified that he observed Cancel standing next to an automobile. Hunt did not observe anything exchanged between Cancel and the occupants of the automobile. Cancel was not someone whom Hunt had seen before at the location. Upon the arrival of the police, Cancel did not make any furtive glances or seek to flee the area. Rather, Cancel started to walk toward the building in which he resided, 5415 Bridge Avenue. Cancel's behavior did not give rise to a reasonable inference that he was a participant in a felony. *Sibron* v. *New York* (1968), 392 U.S. 40; *State* v. *Hill* (1977), 52 Ohio App. 393, N.E. 2d 775; *cf. State* v. *Woods* (Dec. 12, 1985), Cuyahoga App. No. 49892, unreported. I believe that Cancel's observed actions were subject to a variety of innocent interpretations. *State* v. *Fahy* (1988), 49 Ohio App. 3d 160. Therefore, based on the totality of the circumstances, I would have found that Hunt did not have probable cause to believe Cancel was committing or had committed a drug offense.

The majority also appears to hold that the search warrant validated Hunt's search of Cancel. Although the search warrant is not contained in the record, testimony at the suppression hearing reveals that the search warrant authorized the search of 5415 Bridge Avenue, apartment 2, its curtilage, and persons present.[1] The building at this address is a four-unit apartment structure. A man named Todd was also mentioned in the search warrant insofar as he occupied apartment 2. Cancel was a tenant in the building and occupied apartment 4.

The majority's reliance in *State* v. *Schultz* (1985), 23 Ohio App. 3d 130, 491 N.E.2d 735 is inapposite. While a warrant for the search of premises implicitly confers limited authority on police officers to conduct investigative detentions of individuals found on those premises who may be reasonably connected to that property, Hunt's full search of Cancel exceeded the limited detention contemplated in *Schultz.*

The chief issue to confront is whether Cancel was within the curtilage of apartment 2 at the time of the search. The question of what constitutes the curtilage of a particular apartment in a multi-unit apartment building for Fourth Amendment purposes has not been addressed squarely in Ohio.

The Supreme Judicial Court of Massachusetts stated:

"In a modern urban multi family apartment house, the area within the 'curtilage' is necessarily much more limited than in the case of a rural dwelling subject to one owner's control. [Citations omitted.] In an apartment house, a tenant's dwelling cannot reasonably be said to extend beyond his own apartment and perhaps

any separate areas subject to his exclusive control." *Commonwealth v. Thomas* (1975), 358 Mass. 771, 774-5, 267 N.E.2d 489.

In *People* v. *Becker* (1975), 188 Col. 160, 533 P.2d 494, the Supreme Court of Colorado held that the common are in front of apartments contiguous to all apartments and not fenced in is not part of the curtilage of a particular apartment. In *United States* v. *Miguel* (C.A. 2, 1965), 340 F.2d 812, 814, cert. denied, 382 U.S. 859, the court held that the lobby of a multi-tenanted apartment house was not within the curtilage of defendant's apartment. The Supreme Court of the United States stated the following with respect to curtilage:

"[W]e believe that curtilage questions should be resolved with particular reference to four factors: the proximity of the area claimed to be curtilage to the home, whether the area is included within an enclosure surrounding the home, the nature of the uses to which the area is put, and the steps taken by the resident to protect the area from the observation by people passing by." *United States* v. *Dunn* (1987), 480 U.S. 294, 301. Here, the State failed to show how the public area in front of the building fell within the curtilage of the particular apartment described in the warrant or how the tenant of apartment 2 exercised exclusive control over such area. There is no evidence that the area in front of 5415 Bridge Avenue was enclosed or one in which the tenant or owner had any expectation of privacy. The area in front of 5415 Bridge Avenue does not harbor "those intimate activities associated with domestic life and the privacies of the home." *Id.* at fn. 4. While the determination of what constitutes curtilage should be made on a case-by-case basis, I find that Cancel was not within the curtilage of apartment 2 when he was searched. Therefore, the scope of the warrant did not extend to Hunt's search of Cancel.

Accordingly, I would reverse the judgment of the trial court.

---

[1] For purposes of my analysis, I assume that the search warrant authorized the search of persons present within the curtilage of apartment 2 instead of merely persons present within apartment 2.