Agnes, Peter W., J.
The plaintiff, AlphaGary Corporation (“AlphaGary”), brings this action against Gregory C. Gitto (“Gitto”), Edwina Gitto (“Mrs. Gitto”), Samuel Gitto, and Newline, Inc. (“Newline”) alleging breach of contract, breach of non-compete provision of settlement agreement, violation of trade secret statutes and violation of Chapter 93A. Newline counterclaimed against the plaintiff and brought claims against third-party defendants, Robert N. Gingue (“Gingue”), Robert S. Cox (“Cox”), and Philip A. Bourgeois (“Bourgeois”), alleging civil conspiracy, violation of G.L.c. 93, §§4, 6, 10, and 12, violation of G.L.c. 93A, §§2 and 11, violation of G.L.c. 12, §111, abuse of process, malicious prosecution, and trespass. This matter is before the court on AlphaGary, Gingue, and Cox’s motion for partial summary judgment and Mrs. Gitto’s cross motion for summary judgment. For the reasons stated below, AlphaGary, Gingue and Cox’s motion is ALLOWED and Mrs. Gitto’s motion is DENIED.

BACKGROUND

Gitto is a former employee of AlphaGary Corporation. After his employment with AlphaGary ended in 1992, he started Newline Color, Inc. in which his parents, Samuel and Edwina Gitto, own stock. Mrs. Gitto, although an owner, does not participate in the management or daily operations of Newline. In 1997, AlphaGary brought suit against Newline in Suffolk Superior Court, alleging improper competition and misappropriation of trade secrets. In July 1999, this litigation ended in a settlement agreement. In that agreement, Newline, Gitto and his parents agreed that they would not “directly or indirectly (or through any entity or organization owned or partially owned directly or indirectly by, or otherwise related to any one of them)” engage in specified business activities.
In 2000, AlphaGary received word from Bourgeois, a former Newline employee, that Newline was violating the settlement agreement. Newline states that AlphaGary should have been skeptical of these accusations, because AlphaGary knew that Bourgeois was an admitted perjurer. AlphaGary relayed Bourgeois’ information to the Worcester County District Attorney’s Office, and the state police obtained a search warrant for the premises of Newline. Newline claims that, at AlphaGary’s request, some of AlphaGary’s employees were present during the search; Newline also alleges that the police did not follow proper procedure for procuring this civilian presence. During the search, the police discovered incriminating evidence against Newline. The parties are in dispute about whether the particular items found were in fact the items mentioned by Bourgeois. Charges were brought against Gitto and Newline. Newline pled guilty to “stealing, storage, and misappropriating” trade secrets. The charges against Gitto were dropped.
In 2003, AlphaGary commenced this litigation seeking damages for Newline’s alleged violation of the 1999 settlement agreement. Newline then counterclaimed against the AlphaGary and brought claims *490 against Gingue and Cox — two AlphaGary executives— and Bourgeois, alleging that these parties acted in bad faith, in pursuing criminal charges against Newline. Newline claims that AlphaGary and its executives harbor a deep dislike of Gitto and his parents, and are intent on destroying Newline.

DISCUSSION

I. Summary Judgment Standard

Summary judgment shall be granted where there are no genuine issues as to any material fact and where the moving party is entitled to judgment as a matter of law. Mass.R.Civ.P. 56(c); Cassesso v. Comm’r of Corr., 390 Mass. 419, 422 (1983); Cmty. Nat’l Bank v. Dawes, 369 Mass. 550, 553 (1976). The moving party bears the burden of affirmatively demonstrating the absence of a triable issue and that the summaiy judgment record entitles the moving party to judgment. Pederson v. Time, Inc., 404 Mass. 14, 16-17 (1989). “A court must deny a motion for summaiy judgment if, viewing the evidence in the light most favorable to the nonmoving party, there exist genuine issues of material fact.” Locator Services Group v. Treasurer and Receiver Gen., 443 Mass. 837, 846 (2005).

II. AlphaGary, Gingue, and Cox’s Motion on Newline’s Counterclaims

A. Malicious Prosecution

Newline’s claim for malicious prosecution is missing an essential element. To be successful on this cause of action, a plaintiff must demonstrate “that he was damaged because the defendant commenced the original action without probable cause and with malice, and that the original action terminated in his favor.” Chervin v. Travelers Ins. Co., 448 Mass. 95, 103 (2006). Accordingly, if the plaintiff was not successful in the underlying litigation, then he may not proceed with this claim. See Seelig v. Harvard Cooperative Society, 1 Mass.App.Ct. 341, 346 (1973) (“the compromise of a dispute” bars a claim for malicious prosecution); Bannon v. Auger, 262 Mass. 427, 435-36 (1928). Here, the initial or underlying case is the criminal proceeding which did not end in Newline’s favor; it resulted in a guilty plea. As such this cause of action fails as a matter of law.
In addition, Newline has failed to demonstrate that the police lacked a basis for the search warrant which led to the seizure of evidence and the criminal charges. The existence of probable cause in the criminal proceeding is a further reason why the civil claim for malicious prosecution fails.

B.Abuse of Process

AlphaGaiy is entitled to summaiy judgment on Newline’s claim for abuse of process. A successful prosecution of this claim requires that the plaintiff show that “(1) process was used; (2) for an ulterior or illegitimate purpose; (3) resulting in damage.” Adams v. Whitman, 62 Mass.App.Ct. 850, 853 (2005) (citations omitted). The defendant’s “ulterior motive is more than the intent to harass; there must be intention to use process for coercion or harassment to obtain something not properly part of the suit.” Broadway Management Services Ltd. v. Culllinet Software, Inc., 652 F.Sup. 1501, 1503 (D.Mass. 1987). “There is no liability where the defendant has done nothing more than carry out the process to its authorized conclusion, even though with bad intentions.” Antelman v. Lewis, 480 F.Sup. 180, 186 (D.Mass. 1979).
Here, AlphaGary and its executives turned over information to law enforcement personnel, which led to a search warrant and the discovery of incriminating information. There is no evidence that they obtained any pecuniary benefit apart from the retrieving of the property at issue in the criminal prosecution. Regardless of Newline’s contention that AlphaGary is set on destroying it, Newline has failed to state the specific economic advantage, outside of the litigation, that AlphaGary was seeking to gain. Consequently, its counterclaim for abuse of process must fail.

C. Violation of G.L.c. 93, §§4, 6, 10, and 12

Two sections of this statute simply are inappropriate to this dispute. General Laws c. 93, §6 is not applicable, as the parties did not enter into a contract “for sale of goods, wares, merchandise, supplies or other commodities.” The conduct at issue is the AlphaGary’s pursuit of criminal complaints against Newline, not a contract of any kind. In addition, G.L.c. 93, §10 is not relevant as it does not confer a private right of action. It allows for actions to be “brought by the attorney general” and not by private parties. By their plain language, these sections of the statute are not germane to this situation.
In addition, Newline may not prevail on its claims under G.L.c. 93, §§4 and 12. The intent of antitrust statutes is “to encourage free and open competition in the interests of the general welfare and economy by prohibiting unreasonable restraints of trade and monopolistic practices in the commonwealth.” G.L.c. 93, §2. A party bringing suit under these laws must give “specific facts either that the [opponent] had conspired with other named parties to fix prices, or that the [opponent’s] action . . . had somehow substantially lessened competition or tended to create a monopoly.” GTE Products Corp. v. Broadway Elec. Sup., 42 Mass.App.Ct. 293, 302 (1997). Newline claims that AlphaGaiy, Gingue, Cox and Bourgeois knowingly passed on false information to law enforcement personnel for the purposes of destroying Newline. These allegations do not amount to price fixing, a lessening of competition, or the creation of a monopoly. As such, Newline’s claim must fail. Finally, because Newline has no viable claim under any other section of Chapter 93, its claims for money damages under section 12 may not withstand summaiy judgment. G.L.c. 93, §12 (“Any person . . . injured ... by reason of a violation *491 of the provisions of this chapter may . . . recover the actual damages sustained”).

D. Violation of G.L.c. 93A, §§2 and 11

Newline’s allegations do not amount to a violation of G.L.c. 93A, §2. “Although whether a particular set of acts, in their factual setting, is unfair or deceptive is a question of fact, the boundaries of what may qualify for consideration as a G.L.c. 93A violation is a question of law.” Chervin, 448 Mass. at 112 (2006) (citations omitted). In order for a plaintiff to recover under G.L.c. 93A, §2, he must point to a “relevant business transaction with the defendant which would serve as a predicate for liability.” See id. Here, Newline has not cited an underlying commercial transaction, and thus AlphaGaiy and its executive are not liable under this statute.
Further, the subject matter of G.L.c. 93A claims must be action taken in a business context; this issue turns on “the nature of the transaction, the character of the parties and their activities, and whether the transaction was motivated by business or personal reasons.” Poznik v. Mass. Medical Ins. Ass’n, 417 Mass. 48, 52 (1994). AlphaGary’s actions were not taken in a business context, as AlphaGary is not in the business of supplying information to law enforcement personnel. Also, according to NewLine, AlphaGary and its executives were motivated by their personal dislike of Newline and the Gittos. Therefore, there is insufficient evidence to find unfair and deceptive practices in violation G.L.c. 93A, §2 and Newline may not recover under G.L.c. 93A, §11.

E.Violation of G.L.c. 12, §111

Newline’s claim for violation of G.L.c. 12, §111 must fail. This cause of action requires a plaintiff to demonstrate that “(1) [his] exercise or enjoyment of rights secured by the Constitution or laws of either the United States or of the Commonwealth, (2) [has] been interfered with, or attempted to be interfered with, and (3) that the interference or attempted interference was by threats, intimidation or coercion.” Swanset Dev. Corp. v. Taunton, 423 Mass. 390, 395 (1996). “A threat involves the intentional exertion of pressure to make another fearful or apprehensive of injury or harm. Intimidation involves putting in fear for the purpose of compelling or deterring conduct. Coercion involves the application to another of such force, either physical or moral, as to constrain him to do against his will something he would not otherwise have done.” Reproductive Rights Network v. Pres. of Univ. of Mass., 45 Mass.App.Ct. 495, 505 (1998) (citations omitted). Newline’s allegations simply do not constitute any of these actions.

F.Trespass

Based on the material facts not in dispute, Newline’s claim for Trespass also fails. A trespass is “an unprivileged, intentional intrusion on land in possession of another.” Dusoe v. Mobil Oil Corp., 167 F.Sup.2d. 155, 163 (D.Mass. 2001) (applying Massachusetts law). Newline cites Commonwealth v. Sbordone, 424 Mass. 802, 806 (1997), and argues that Massachusetts law prohibits civilians from participating with police in the execution of search warrants unless the civilians are specifically named. The law is to the contrary. In Sbordone, supra, the Supreme Judicial Court held that neither Article 14 of the Declaration of Rights nor the provisions of G.L.c. 276 forbid civilians from assisting the police in the execution of search warrants so long as the police provide suitable supervision. There is no requirement that the civilians be named in the application for the warrant. Thus, in the present case where employees of AlphaGary entered the premises of Newline with the consent of the police, who had a warrant to search this area, there was no violation of the rule in the Sbordone case. Thus, the employees’ entry was not unprivileged. See also Commonwealth v. Murphy, 353 Mass. 433, 438 (1968) (“public officers may legally enter upon land privately owned when necessary to carry out their official duties” and in doing so are not trespassing).
Moreover, despite allegations that the information leading to this warrant was false and that police did not follow proper procedure in procuring it, Newline has not provided a factual basis to call into question the accuracy of the information submitted to the magistrate in support of the search warrant. The fact that Newline could have raised such arguments during the criminal proceedings and failed to do so is an indication that they are allegations only without factual support.

G.Civil Conspiracy

In Massachusetts, a person may commit civil conspiracy in two ways: he may “[1] do) a tortious act in concert with [an] other or pursuant to a common design with him, or [2] know] that [an] other’s conduct constitutes a breach of duty and [give] substantial assistance or encouragement to the other so to conduct himself.” Kyte v. Philip Morris, Inc., 408 Mass. 162, 166 n.5 (1990) (quoting Restatement (Second) of Torts §876(a) and (b) (1979)). The first theory does not apply, since, for the reasons stated in the above sections, there is not sufficient evidence to find that AlphaGary, Gingue, and Cox committed any underlying tortious activity together. See Johnson v. Brown & Williamson Tobacco Corp., 122 F.Sup.2d 194, 298 (2000) (holding that, under Massachusetts law, this theory requires “a tortious act done in furtherance of [the defendants’] plan”). Also Newline may not proceed under the second theory, since there is inadequate evidence to show that AlphaGary, Gingue, and Cox knowingly acted in concert with Bourgeois to give misinformation statements to the District Attorney’s Office. The only evidence of their knowledge of the alleged falsity of Bourgeois’ statement is Gitto’s accusation. Gitto states that Gingue and Cox are set on destroying Newline and had reason to believe that *492 Bourgeois was lying. This statement is not sufficient evidence to show that AlphaGary, Gingue, and Cox knew that Bourgeois’ statementwas inaccurate. Thus, a jury could not reasonable conclude that they committed civil conspiracy in aiding and encouraging Bourgeois to report his beliefs to law enforcement authorities. See Kyte, 408 Mass. at 168 (“Evidence of the defendant’s knowledge of its substantial, supporting role in an unlawful enterprise is required”).

III. Mrs. Gitto’s Motion on AlphaGary’s Claim

Mrs. Gitto is not entitled to summary judgment on the claims against her. There is a material dispute of fact over whether she violated the terms of the settlement agreements. Mrs. Gitto claims that, since she did not participate in the management of Newline, she cannot be found liable for its practices. However, the language on the agreement could reasonable extend liability to a non-participating owner of the company. The contract says that Mrs. Gitto will refrain from certain business activities personally and “through any entity or organization” which she “own[s] or partially own[s].” A reasonable juiy could find that the words of the agreement barred Mrs. Gitto from having ownership in a corporation that engages in certain trade practices. As such, summary judgment is inappropriate on this question.

ORDER

For the foregoing reasons, it is hereby ORDERED that AlphaGaiy, Gingue, and Cox’s motion for partial summary judgment is ALLOWED and Mrs. Gitto’s cross motion for summary judgment is DENIED.