369 So.2d 348 (1979)
Harold C. HESSELRODE, Appellant,
v.
STATE of Florida, Appellee.
No. 78-371.
District Court of Appeal of Florida, Second District.
February 14, 1979.
Rehearing Denied March 21, 1979.
*349 W. Daniel Kearney of Kearney & Mulock, Bradenton, and Ginsburg & Byrd, P.A., Sarasota, for appellant.
Robert L. Shevin, Atty. Gen., Tallahassee, and William I. Munsey, Jr., Asst. Atty. Gen., Tampa, for appellee.
RYDER, Judge.
After a lengthy hearing on a motion to suppress resulted in the trial judge granting portions of the motion but denying other portions, appellant pleaded nolo contendere to a charge of possession of over 100 pounds of marijuana. He preserved his right to appeal and presents us with six points, only one of which merits discussion.
Again we are confronted with a question of search and seizure and we are immediately reminded somewhat of the case of Wilson v. State, 363 So.2d 1146 (Fla.2d DCA 1978), except there the police failed to obtain a search warrant and here they sought advice in obtaining a search warrant, faulty as that advice turned out to be. The record on appeal discloses that representatives of the Longboat Key Police Department, having what they felt to be probable cause, contacted a representative of the State Attorney's Office who drafted and had prepared a search warrant for the use of the police. However, the author of the warrant so strictly structured the warrant's terms as to have it issued and directed to an extremely closed category of persons, namely: "To: All and singular the Sheriff and/or Deputy Sheriffs of Manatee County, ..." The record is silent as to why the search warrant was so strictly structured, but be that as it may, that was how and to whom it was issued  to Sheriffs  and we emphasize, not to any other category of peace officers.
*350 The affidavit for the warrant, so issued, was executed by officers of the Longboat Key Police Department. The execution of the warrant and the ensuing search and seizure of contraband located within the described premises was conducted solely by members of the Longboat Key Police Department.
Section 933.08, Florida Statutes, (1977) reads:
"The search warrant shall in all cases be served by any of the officers mentioned in its direction, but by no other person except in aid of the officer requiring it, said officer being present and acting in its execution." (Emphasis added)
Appellant urges that the warrant is fatally defective because it is directed to one category of peace officers and yet another category of police executed the warrant. We agree.
First, we should remark that on this point there is little case law, and we perceive the reason simply is that this point is rather basic and there has been little litigation because most law enforcement agencies comply with the obvious and plain directions of the statute.
Before traveling further, we should also observe what the people of Florida adopted in an even more organic part of our law in Florida relating to searches and seizures. In our Constitution, Article I, Declaration of Rights, Section 12, entitled Searches and Seizures, we find the following:
"The right of the people to be secure in their persons, houses, papers and effects against unreasonable searches and seizures and against the unreasonable interception of private communications by any means, shall not be violated. No warrant shall issue except upon probable cause, supported by affidavit, particularly describing the place or places to be searched, the person or persons, thing or things to be seized, the communications to be intercepted, and the nature of evidence to be obtained. Articles or information obtained in violation of this right shall not be admissible in evidence."
It has been long well-settled law that statutes authorizing searches and seizures must be strictly construed and affidavits and search warrants issued thereunder must strictly conform to the constitutional and statutory provisions authorizing their making and issuance. State ex rel. Wilson v. Quigg, 154 Fla. 348, 17 So.2d 697 (1944); Gildrie v. State, 94 Fla. 134, 113 So. 704 (1927); Hart v. State, 89 Fla. 202, 103 So. 633 (1925); Jackson v. State, 87 Fla. 262, 99 So. 548 (1924); Carter v. State, 199 So.2d 324 (Fla.2d DCA 1967).
Valiantly as did the State Attorney's Office try here, it could not cure the original sin initiated by the hand of one of its members. The State would have us say that because there were members of the Manatee Sheriff's Office out and about the scene, then service of the warrant by the Longboat Key officers satisfied the statute and the constitution. The State points to Nofs v. State, 295 So.2d 308 (Fla.2d DCA 1974). In Nofs the warrant was directed to "the Sheriff and/or Deputy Sheriffs of Pinellas County, Florida; and police officers of the City of St. Petersburg, Florida." Service of the warrant was made in the City of Gulfport by, and this is another twist, a St. Petersburg police officer. The warrant in Nofs was saved for, although the officer was technically out of his jurisdiction as a St. Petersburg police officer, he was, however, a bonded deputy sheriff. He thus belonged to one of the categories to which the warrant was directed. He also accompanied and assisted the other officers in searching the premises subject to the warrant. Thus, Nofs differs from this case.
A fair reading of the transcript of the hearing in the case sub judice leads us to but one conclusion and that is this investigation was solely the work of the Longboat Key Police Department and only incidentally others. No member of the Manatee Sheriff's Office on July 4, 1977 participated in this investigation, the execution of the warrant or the search of the premises subject to the warrant. At best, what Manatee to the warrant. At best, what Manatee deputies were present were there as passive observers obtaining what intelligence *351 information they could gather for the separate use of their own department.
Occasionally, when a court suppresses evidence gathered by law enforcement agencies after many hours of hard labor, one is led to believe it is the fault of the court for the loss of evidence, even though the court was not present when the evidence was seized and had nothing to do with the direction of the officers as they accomplished the task. It would be too easy for this court to approve the procedure used herein, but the record cries out that the procedure contravened the statute and was wrong.
Save for the First and Fifth Amendments, the Fourth Amendment, from which we receive Section 12 to Article I of our own Florida Constitution, is probably most important to the liberty of all freedom loving citizens. One cannot sit idly by and observe its meaning be slowly eroded away even by well-meaning police and prosecutors.
A court is reluctant to suppress evidence, which if obtained in a lawful fashion, would have been of compelling importance to the prosecution for felony. But there is no other course by which a court can insist upon compliance by police officers with the requirements of law with respect to searches and seizures than to suppress evidence illegally obtained.
We share the frustration so eloquently expressed by the learned trial judge below but as keepers of the law, we must maintain the integrity of our constitution adopted by the people and statutes given to us by our legislators.
Thus, we reverse the ruling of the trial judge as to the admissability of contraband found in the premises subject to the search warrant and hold that such contraband seized in said premises subject to the faulty warrant be suppressed. Because of this, it is not necessary to discuss appellant's fourth point urging the search warrant was tainted by illegally procured evidence.
All of this avails Mr. Hesselrode very little, however. Our review of the record and briefs reveals there is no merit to the other points raised on appeal, therefore, we affirm the trial judge's rulings thereon. Furthermore, our review of the record also shows that appellant's plea of nolo contendere was knowingly, intelligently, freely and voluntarily entered; and as there is ample evidence of the existence of more than 100 pounds of marijuana (some fifteen bales) legally seized before and apart from the warrant and of which appellant in his plea acknowledged illegal possession, his judgment of guilt and sentence are hereby AFFIRMED.
BOARDMAN, A.C.J., and OTT, J., concur.