544 So.2d 1028 (1989)
STATE of Florida, Appellant,
v.
William Perry WADE, Jr., Appellee.
No. 88-01284.
District Court of Appeal of Florida, Second District.
April 26, 1989.
Rehearing Denied June 22, 1989.
*1029 Robert A. Butterworth, Atty. Gen., Tallahassee, and David R. Gemmer, Asst. Atty. Gen., Tampa, for appellant.
Anthony F. Gonzalez and Howard J. Shifke of Anthony F. Gonzalez, P.A., Tampa, for appellee.
DANAHY, Acting Chief Judge.
The state appeals an order granting the appellee's motion to suppress the evidence against him in a prosecution of the appellee for racketeering, third degree grand theft, two counts of dealing in stolen property, and second degree grand theft. We reverse.
Two issues are presented for our consideration. First is the question whether the search warrant used to obtain the evidence satisfied the constitutional and statutory requirements that a search warrant must particularly describe the property or thing to be seized. See U.S. Const. amend. IV; Art. I, § 12, Fla. Const.; § 933.05, Fla. Stat. (1987). The second issue concerns the manner in which this search warrant was executed. We approve the search warrant insofar as the particularity requirement is concerned, and we approve the manner in which the warrant was executed. Accordingly, we reverse.
The search warrant in this case was a printed form which was utilized in almost exactly the same manner as the search warrant which this court approved in State v. Smelt, 417 So.2d 1154 (Fla. 2d DCA 1982). The warrant described the premises to be searched by reference to an Exhibit A "which was incorporated and made a part hereof for all purposes" and described the premises as being occupied by or under the control of the appellee. The warrant then continued:
[A]nd there is now being kept on said premises certain COMPUTER EQUIPMENT AND BUSINESS RECORDS which is [sic] being kept and used in violation of the Laws of the State of Florida, to-wit: the Laws prohibiting GRAND THEFT, F.S.S. 812.014 and DEALING IN STOLEN PROPERTY, F.S.S. 812.019.
That the facts tending to establish the grounds for this application and the probable cause of affiant believing that such facts exist are as follows:
EXHIBIT "B" WHICH IS INCORPORATED AND MADE A PART HEREOF FOR ALL PURPOSES.
The Exhibit B referred to in the search warrant is also referred to in the affidavit of probable cause. Exhibit B is a lengthy narrative of information provided by a witness named James H. Lathrop who was employed by Control Data Corporation (CDC) and who was assigned to investigate the appellee, a former employee of CDC, regarding the belief of CDC that the appellee was participating in the theft of CDC computer inventory or parts. The narrative described the fact that the appellee was engaged in a business known as "Computer Technologies, Inc." The narrative described Mr. Lathrop's dealings with the appellee by which, at the appellee's request and pursuant to his instructions, Mr. Lathrop would illegally obtain CDC equipment and deliver it to the appellee.
The narrative concludes that the investigating officers and the witness, Lathrop, had determined through investigation that the appellee operates the business known as Computer Technologies, Inc.; that he is currently dealing in stolen property belonging to CDC, and has done so dating back to at least April of 1986; that the appellee is currently keeping on said premises known as Computer Technologies, Inc., stolen property belonging to CDC which includes, but is not limited to: 1 CDC head alignment kit (marked with ultraviolet solution), 1 CDC head alignment pack (serial no. H615979), and 1 CDC data pack (serial no. *1030 H875827); and furthermore, that the appellee has kept stolen property belonging to CDC at his place of business, Computer Technologies, Inc., dating back to at least April of 1986.
On November 23, 1987, detectives from the Hillsborough County Sheriff's Office went to the appellee's place of business and read the entire warrant to the appellee, including Exhibit A and Exhibit B. Once the warrant was read, the detectives brought Lathrop and several auditors from CDC on to the appellee's premises to assist in the search. A considerable amount of CDC equipment was seized. It was established that CDC computer parts are not in the general stream of commerce because of CDC's policy of retaining all parts in-house.
The trial judge, in granting the appellee's motion to suppress, noted that "computer equipment and business records" per se are not prima facie contraband. The trial judge ruled that the description of the property in the printed form of the search warrant was over broad and could not be particularized by reference to Exhibit B based on the decision in Carlton v. State, 449 So.2d 250 (Fla. 1984). We believe the trial judge incorrectly applied the Carlton decision. We find nothing in that decision which diminishes in any respect our earlier decision in State v. Smelt, in which we upheld a very similar search warrant. The trial judge apparently felt that, based on Carlton v. State, he was not permitted to look at the exhibits attached to the search warrant. We do not believe that Carlton so holds. As a practical matter, when the information in support of a search warrant is quite lengthy, as in this case, there is no way that a printed form of search warrant can be used without attaching an exhibit and incorporating it by reference. Incorporation by reference is a recognized method of making one document of any kind become a part of another separate document without actually copying it at length in the other. Black's Law Dictionary 690 (5th ed. 1979). The device is used constantly in the drafting of legal documents, and we can see no reason whatsoever why it is not perfectly valid in the case of a search warrant. The issuing judge in this case carefully identified each page of the exhibits with his initials, the date, and the time of day. He did all that he could to indicate that the exhibits were part of the body of the search warrant. We so consider them to be.
Having found the search warrant in this case not to be over broad, we turn our attention to the manner in which it was executed. As noted above, the detectives serving the warrant brought the CDC investigator Lathrop and several CDC auditors onto the premises to assist in the search. The appellee insists on characterizing the search warrant as being limited to a particular search for three specific items described in Exhibit B. He then goes on to argue that the listing of three items should not authorize the type of intrusion that took place in this case, wherein competitors of the appellee assisted detectives in hauling away fifty-three enumerated items and thus, according to the appellee, crippling the appellee's computer business.
While we are acutely aware that the procedure followed in this case could be misused and result in the type of abuse claimed by the appellee to have occurred, the use of advisers to identify items encompassed by a search warrant is not without precedent; we agree that there are exceptional situations in which this practice is unobjectionable, and we believe the instant case presents such exceptional circumstances. See 2 W. LaFave, Search and Seizure § 4.11(b), at 343 (1987).
Law enforcement officers are not generally trained in the recognition of computer equipment and parts. Were they not allowed to utilize the assistance of experts to identify such property, then it would simply be impossible for law enforcement officers to execute a search warrant for the seizure of computer equipment and parts. The fact that such experts are employees of the theft victim does not in and of itself invalidate the procedure. Who better than CDC employees could identify CDC property? The search warrant in this case encompassed all CDC equipment and parts on the business premises of the appellee, which presumably would be stolen property *1031 since CDC kept all parts in-house and did not sell parts to anyone else for servicing purposes.
The situation presented in this case is highly unusual and involves property of a technical nature not generally familiar to law enforcement officers. We have carefully examined the search warrant and the description of the execution of the search warrant, and we conclude that the procedures used in this case reflect care and a full appreciation of the appellee's constitutional rights. The search warrant was sufficiently particular and in all respects valid. The manner of its execution involved a minimal intrusion not in excess of that necessary to allow full execution of the warrant.
For the foregoing reasons, we reverse the order of suppression and remand for further proceedings.
LEHAN and PATTERSON, JJ., concur.