622 So.2d 67 (1993)
William A. MORRIS, III, Appellant,
v.
STATE of Florida, Appellee.
No. 92-2796.
District Court of Appeal of Florida, Fourth District.
July 21, 1993.
William R. Amlong of Amlong & Amlong, P.A., Fort Lauderdale, for appellant.
Robert A. Butterworth, Atty. Gen., Tallahassee, and Edward Giles, Asst. Atty. Gen., West Palm Beach, for appellee.
ANSTEAD, Judge.
At issue in this appeal is whether an official of a police agency authorized to serve a search warrant must participate in or supervise a search conducted pursuant to the warrant. We hold that such an official must participate in or supervise the search, and hereby reverse a ruling to the contrary.

TRIAL COURT PROCEEDINGS
Appellant, William A. Morris, III, is a medical doctor and was charged by information with Medicaid fraud, wherein it was alleged that Morris billed the state in an amount over $200 for medical services not rendered. He moved to suppress evidence seized in a search of his premises by employees of the Florida Auditor General's Office. After an adverse ruling, he pled nolo contendere to the charges, but reserved the right to appeal the ruling on the motion to suppress.
The facts in this case are without dispute. A search warrant was issued to search Morris' premises for certain records. The warrant was directed to several police agencies, including "the Chief of Police, *68 Fort Lauderdale, Broward County, Florida, or any of his Police Officers." Subsequently, Morris' office was searched by six employees of the Auditor General's Office accompanied by a Fort Lauderdale police officer. Dr. Morris was not present. The officer provided a copy of the warrant to the doctor's receptionist and then waited in the reception area while the employees conducted the search in other areas of the physician's office. The officer did not take part in the search or take custody of any of the records. After the Auditor General employees concluded the search, the officer signed the inventory sheet, which was prepared by the Auditor General employees, at their request but without checking its accuracy or determining what was actually seized by the employees. Three groups of materials described in the warrant were seized by the Auditor General employees: (1) patient files specified by name and number; (2) 38 daily sign-in logs for office patients; and (3) miscellaneous forms (e.g., blank Medicaid forms, billing manuals, remittance vouchers, and Medicaid payment forms for 1989-1991). The officer also testified that he did not know what a Medicaid claim form, HRS handbook, remittance vouchers, etc., looked like, nor where they would be located.

LAW AND ANALYSIS
By statute, the Auditor General of Florida is given broad authority to investigate Medicaid fraud and to examine the records of certain health care providers. However, the authority to examine records does not extend to physicians. Section 409.920(10)(a), Florida Statutes (1991) states in relevant part that:
(10) In carrying out his duties and responsibilities under this section, the Auditor General may:
(a) Enter upon the premises of any health care provider, excluding a physician, participating in the Medicaid program to examine all accounts and records that may, in any manner, be relevant in determining the existence of fraud in the Medicaid program... .
(Emphasis added). Hence, to examine or seize the records of a physician, the government must secure a search warrant or utilize other lawful process. As to search warrants, section 933.08, Florida Statutes (1991) provides:
Search warrants to be served by officers mentioned therein.  The search warrant shall in all cases be served by any of the officers mentioned in its direction, but by no other person except in aid of the officer requiring it, said officer being present and acting in its execution.

(Emphasis added). Because of the importance and the constitutional dimension to a citizen's right to be free of unreasonable searches and seizures, statutes authorizing searches and seizures should be strictly construed, and the issuance of search warrants and searches conducted pursuant thereto must strictly conform to such statutory provisions. State v. Tolmie, 421 So.2d 1087 (Fla. 4th DCA 1982).
Under section 933.08, the persons authorized in a warrant to conduct a search and seize the items described must actually execute the warrant and conduct the search. In Hesselrode v. State, 369 So.2d 348 (Fla. 2d DCA 1979), cert. denied, 381 So.2d 766 (Fla. 1980), the second district invalidated a search conducted by police officers from one jurisdiction where the warrant was directed to officials of another jurisdiction, even though officers of the designated jurisdiction were present during the search. See also Stewart v. State, 389 So.2d 1231 (Fla. 2d DCA 1980).
Subsequently, in State v. Wade, 544 So.2d 1028 (Fla. 2d DCA), rev. denied, 553 So.2d 1168 (Fla. 1989), the court approved the use of non-police advisers to aid the police in identifying computer parts described in a search warrant because, the court noted, police officers are not generally trained in the recognition of computer parts and equipment.
Although Wade did not mention the Hesselrode or Stewart decisions, and did not expressly address the degree of participation by the assisting civilians, the opinion suggests that the civilians' role was not extensive. For instance, the court began *69 the discussion by noting that "the use of advisers to identify items encompassed by a search warrant is not without precedent." 544 So.2d at 1030. Further, the court reasoned that "[w]ere they [the police] not allowed to utilize the assistance of experts to identify such property, then it would simply be impossible for law enforcement officers to execute a search warrant for the seizure of computer equipment and parts." Id.
Initially, we do not believe that section 409.920(10)(a), and its exclusion of a physician's premises from inspections by the Auditor General, was intended to bar the Auditor General from assisting an authorized police agency in executing a warrant. Under section 933.08, the assistance of civilians is expressly permitted if the law enforcement officers specified in the warrant need aid, provided, "said officer being present and acting in its [the warrant's] execution." However, the officer designated is still responsible for carrying out the search and any assistance must be "in aid of the officer requiring it."
Our concern here is that the authorized police agency did not participate in or supervise the actual search at all. Assistance is one thing, displacement quite another. It is undisputed that the Auditor General employees conducted the entire search unsupervised and unobserved by the officer authorized to conduct the search. In short, the current case is not one of aiding the officer authorized to conduct the search, but rather displacing that officer. In our view, this displacement is not authorized by the provisions of section 933.08.
Under the statute, the officer authorized by the warrant to conduct the search and seize the evidence designated must participate in or supervise the search even where he requires the assistance of others to do so. While the level of supervision and participation may vary depending upon the circumstances, it is absolutely essential that the officer authorized be present when and where the search is conducted and carry out his responsibility to see that the warrant is properly executed and that its authorization is not exceeded. It is not enough that the authorized officer wait in another room while the search is conducted by others.
It is not by accident that the statute limits the execution of a search warrant to the police officials designated in the warrant. This is the essential purpose of section 933.08. Police officers are sworn officers of the law who take appropriate oaths to carry out the provisions of the federal and state constitutions and the laws of the state and nation. This oath is of no small moment as a protection to our citizens when their privacy is lawfully intruded upon by a search pursuant to a warrant. In other words, it is of great importance that the police authorized to conduct the search do so. They are especially charged and trained to see that the search is carried out properly, lawfully, and in accord with the provisions of the warrant. There is no provision in section 933.08 nor anywhere else that would permit this responsibility to be delegated to an unauthorized person. This delegation, in effect, strips away the citizen's protection provided for in the statute.
In Hesselrode, the court was faced with a much less serious breach of the statute, since it was a police agency that conducted the search, and members of the police agency authorized by the warrant to conduct the search were actually present. Yet, in faithfully carrying out the constitutional and statutory provisions governing the proper use of warrants, the court properly ruled that the search was unauthorized. Judge Ryder, writing for the court, made observations that also apply here:
Occasionally, when a court suppresses evidence gathered by law enforcement agencies after many hours of hard labor, one is led to believe it is the fault of the court for the loss of evidence, even though the court was not present when the evidence was seized and had nothing to do with the direction of the officers as they accomplished the task. It would be too easy for this court to approve the procedure used herein, but the record cries out that the procedure contravened the statute and was wrong.

*70 Save for the First and Fifth Amendments, the Fourth Amendment, from which we receive Section 12 to Article I of our own Florida Constitution, is probably most important to the liberty of all freedom loving citizens. One cannot sit idly by and observe its meaning be slowly eroded away even by well-meaning police and prosecutors.
A court is reluctant to suppress evidence, which if obtained in a lawful fashion, would have been of compelling importance to the prosecution for felony. But there is no other course by which a court can insist upon compliance by police officers with the requirements of law with respect to searches and seizures than to suppress evidence illegally obtained.
We share the frustration so eloquently expressed by the learned trial judge below but as keepers of the law, we must maintain the integrity of our constitution adopted by the people and statutes given to us by our legislators.
369 So.2d at 351.
In accord with the above, we conclude that the trial court was in error and we reverse and remand with directions that the motion to suppress be granted.
GLICKSTEIN, J., and OWEN, WILLIAM C., Jr., Senior Judge, concur.