COMMONWEALTH *vs.* GARY N. SBORDONE.

Suffolk. December 5, 1996. - May 1, 1997.

Present: WILKINS, C.J., ABRAMS, LYNCH, O'CONNOR, & GREANEY, JJ.

*Search and Seizure,* Warrant, Inevitable discovery. *Constitutional Law,*
Search and seizure. *Privacy.*

Article 14 of the Massachusetts Declaration of Rights and G. L. c. 276,
§ 2, do not prohibit the police from utilizing civilians in appropriate cir-
cumstances in executing search warrants where such assistance is neces-
sary or will materially assist the police [806-807], however, except in
extraordinary circumstances, police must appropriately supervise and
limit the civilian's role to assistance rather than participation in conduct-
ing the search [807-808].

In the circumstances of a criminal case, police officers had a reasonable
basis to conclude that the assistance of a civilian insurance fraud
investigator would be materially helpful to the officers in the execution
of a search warrant, however, where the search was merely a retrieval of
clearly labeled and alphabetically stored files, it was not necessary for
the civilian to play an active role in the search. [808-809, §09]

The participation of a civilian, the chief insurance fraud investigator for the
Insurance Fraud Bureau established by St. 1990, c. 338, §§ 1-2, in the
execution in a medical office of search warrants, for which the civilian
was the affiant, was not, in the circumstances, such an intrusion on the
defendant's privacy as would warrant the suppression of the evidence
seized on probable cause, within the scope of the warrant, which would
have been discovered inevitably by police officers without the civilian's
participation. [809-812]

INDICTMENTS found and returned in the Superior Court
Department on October 18, 1993.

A pretrial motion to suppress evidence was heard by *Diane
M. Kottmyer,* J.

An application for an interlocutory appeal was allowed by
*Wilkins,* J., in the Supreme Judicial Court for the county of
Suffolk, and the appeal was reported by him.

*R. Michael Cassidy,* Assistant Attorney General, for the
Commonwealth.

*Paul W. Shaw* for the defendant.

ABRAMS, J. At issue is whether the participation of a chief civilian investigator in the execution of search warrants contravenes art. 14 of the Massachusetts Declaration of Rights and G. L. c. 276, § 2.[1] The defendant, Gary Sbordone, is a chiropractor who has been indicted on fifty-eight indictments, twelve charging larceny, nine charging attempted larceny, thirty-six charging insurance fraud, and one charging presentation of a false claim to the Commonwealth. The defendant moved to suppress medical and business records seized from his Melrose chiropractic clinic during three searches conducted pursuant to three separate search warrants. He argued solely that the searches were unlawfully executed by an unauthorized person in violation of art. 14 and G. L. c. 276, § 2.

After a hearing, a Superior Court judge allowed the defendant's motion and ordered the records suppressed. The judge concluded that, although civilian participation may be permissible in executing search warrants, here the searches were unconstitutional because the police failed to supervise and appropriately to limit the civilian's involvement. The judge also rejected the Commonwealth's argument that the seized evidence was nevertheless admissible under the inevitable discovery doctrine, ruling that suppression was necessary because of the severity of the constitutional violation. A single justice of this court allowed the Commonwealth's request for leave to pursue an interlocutory appeal pursuant to G. L. c. 278, § 28E. See Mass. R. Crim. P. 15 (b) (2), 378 Mass. 882 (1979). For the reasons stated below, we vacate the judge's order of suppression.

We summarize the motion judge's factual findings as follows. Robert Tryon, a Massachusetts State trooper assigned to the office of the Attorney General, applied for the first warrant to search the medical offices and appurtenant storage areas of the defendant's chiropractic clinic in December, 1992. The affiant for the warrant application was Tito Medeiros, an

---

[1]The defendant, Gary Sbordone, relies exclusively on art. 14 and G. L. c. 276, § 2. Federal officers are governed by 18 U.S.C. § 3105 (1994), which differs from our statute. The United States Supreme Court has not addressed this issue.

investigator for the insurance fraud bureau (IFB),[2] who specialized in the investigation of fraudulent bodily injury claims. The application expressly requested that "Tito Medeiros, Investigator from the Insurance Fraud Bureau of Massachusetts be authorized to be present during and assist in the search of said premises," and the assistant attorney general who presented the application for judicial approval also repeated this request orally.

The Commonwealth sought Medeiros's aid in executing the warrant because of his general expertise in investigating insurance fraud and his particular involvement in the ongoing, year-long investigation of the defendant. That investigation also led to the indictment of several of the defendant's patients.[3] The State troopers assigned to the matter were not extensively trained in investigating insurance fraud, they did not have Medeiros's proficiency for identifying the types of insurance documents used to commit fraud, and they did not share his extensive knowledge of the aliases and the use of false social security numbers, the dates of claims and losses, and the modus operandi of this particular fraud ring. A Superior Court judge issued the warrant and orally authorized Medeiros's presence and assistance in the search. The warrant authorized the seizure of all sign-in sheets, logs, or appointment books of the defendant's clinic, and all records concerning several individuals whose names were listed on an addendum.

The warrant was executed on December 5, 1992. Trooper Tryon, who had possession of the warrant, entered the clinic first, displayed the warrant, and secured the premises. Trooper Tryon, Trooper Scott Jennings, Medeiros, an assistant attorney general, and a paralegal from the Attorney General's office were present during the search, as were the defendant and several of his office staff.[4] While Tryon was speaking with the defendant, Trooper Jennings waited in the reception area

---

[2]The insurance fraud bureau (IFB) was created by statute to investigate insurance fraud. St. 1990, c. 338, §§ 1-2.

[3]The IFB had initiated the investigation and, pursuant to its statutory mandate, it then reported the matter to the Attorney General. See St. 1990, c. 338, § 1 (i). Tito Medeiros was its principal investigator on the case and, as was customary, he provided ongoing investigatory support for the Attorney General's subsequent inquiry.

[4]The assistant attorney general did not actively participate in the search. He waited for the defendant's attorney to arrive and then met with him

as Medeiros began searching through the thousands of files which were stored in that area. A clinic employee explained that those files were active, and that the closed files were stored upstairs on the second floor. The search team then went upstairs, where there were thousands of closed files stored alphabetically in file cabinets and boxes. The two State troopers, Medeiros, and the paralegal all searched the cabinets and boxes, removing treatment files which were labeled with names listed on the addendum to the warrant.[5] At some point during the search, Medeiros, unaccompanied by either State trooper, went with the office manager to her office and searched her desk and other areas for files labeled with names listed on the addendum. The office manager then observed Medeiros entering another office to search for files. Trooper Tryon reviewed each file before it was seized. The two State troopers took possession of all seized files, secured them at the Attorney General's office, and then prepared the inventory.

Trooper Tryon later applied for a second and a third warrant to search the defendant's clinic. These warrants were similar to the first search warrant. Again, Medeiros was the affiant, the applications expressly requested judicial authorization for Medeiros's presence and assistance, the assistant attorney general who presented the applications repeated this request orally, and the Superior Court judges who issued the subsequent warrants orally authorized Medeiros to be present during and to assist in the searches. The description of the records subject to seizure was also the same as on the first search warrant, except that the addenda to each warrant listed a different set of names and aliases.

On May 14, 1993, Medeiros went with Troopers Tryon and Jennings to execute the second search warrant at the clinic. Again, the search process consisted primarily of looking through files that were clearly labeled and alphabetically stored, and this time two of the defendant's employees assisted the search team in locating files bearing names which were designated on the addendum. As with the first search, Medeiros actively participated, searching through an employee's desk as well as through file cabinets and storage

inside the clinic. The defendant's attorney was allowed to observe the search.

[5]The defendant has made no claim that his rights were violated by the paralegal's participation in the search.

boxes.[6] Again, Trooper Tryon reviewed each document before it was seized. At the conclusion of the search, Tryon took possession of all seized records, secured them at the Attorney General's office, and prepared the inventory.

Medeiros returned with Troopers Tryon and Jennings to execute the third search warrant at the clinic on April 7, 1994.[7] This time, Medeiros divided the names on the addendum among the two State troopers, three clinic employees, and himself, and they all actively searched for files. During the search, a disagreement arose between Medeiros and the office manager as to whether certain appointment books and sign-in sheets were within the scope of the warrant, and Medeiros decided not to seek seizure of the particular documents in dispute.[8] Again, Trooper Tryon took possession of all seized items, secured them at the Attorney General's office, and prepared the inventory.

1. *Civilian participation.* We have not addressed the question whether, and to what extent, a civilian may participate in a search conducted pursuant to a valid search warrant. But see *Rodrigues* v. *Furtado,* 410 Mass. 878, 881 (1991) (implicitly recognizing the authority of a private physician to execute a warrant for a body cavity search). Article 14 and G. L. c. 276, § 2, neither expressly permit nor prohibit civilian assistance in executing search warrants. Thus, the motion judge relied on authority from other jurisdictions to conclude that art. 14 and G. L. c. 276, § 2, do not prohibit the police from utilizing civilians "in appropriate circumstances" where such assistance "is necessary or will materially assist the police in executing a warrant."[9]

This portion of the judge's ruling is well supported by the

[6]The motion judge made no finding, and the record is unclear, as to whether a State trooper accompanied Medeiros while he searched the employee's desk.

[7]An assistant attorney general was also present, but there was no evidence that he participated in the search.

[8]On the record before us, these documents appear to be within the warrant.

[9]The judge also ruled that advance judicial authorization is a prerequisite to utilizing civilian assistance in the execution of a warrant. The police *expressly requested and received such authorization* for Medeiros's presence and assistance in each search. The better practice is to have the warrant itself indicate that permission has been obtained for a named civilian to be present at the search to assist the police.

weight of authority. See generally 2 W.R. LaFave, Search and Seizure § 4.10 (d), at 676 (3d ed. 1996) ("at least when such a person can be of assistance to the executing officers in determining the location or identity of the items to be seized, it is not objectionable that the officers. . . are accompanied during execution by a private person"). Indeed, Federal agents are expressly authorized by statute to utilize civilian assistance when they execute search warrants. See 18 U.S.C. § 3105 (1994). See also *United States* v. *Robertson*, 21 F.3d 1030, 1032-1034 (10th Cir.), cert. denied, 513 U.S. 891 (1994); *United States* v. *Clouston*, 623 F.2d 485, 486 (6th Cir. 1980). Where the applicable statute is silent regarding civilian participation, as is the case here in the Commonwealth, other State courts have in particular circumstances upheld civilian assistance in the execution of a search warrant. See, e.g., *Harris* v. *State*, 260 Ga. 860 (1991) (dentist authorized to execute search warrant for dental X-rays and impressions); *State* v. *Ricci*, 472 A.2d 291, 298 (R.I. 1984) (crime victim allowed to be present during search to confirm identity of stolen jewelry). As the motion judge correctly noted, a civilian may possess a peculiar expertise or knowledge regarding the means of retrieval or identification of items covered by a warrant, and a rule permitting civilian assistance in such circumstances actually enhances the reasonableness of the search by lessening its intrusiveness. See also *People* v. *Boyd*, 123 Misc. 2d 634, 638 (N.Y. Sup. Ct. 1984) (use of corroboration witness to identify stolen property provided "a fair method for augmented assurance that the warrant w[ould] not be executed with excess"); *Schalk* v. *State*, 767 S.W.2d 441, 454 (Tex. Ct. App. 1988), cert. denied, 503 U.S. 1006 (1992) (where police officer did not have the proficiency necessary to differentiate a trade secret from a legitimate computer software program, the assistance of a civilian software expert limited the items seized rather than increasing them).

The motion judge determined that, because of the complexity of the investigation, the specialized nature of the sought-after documents, and the lack of information regarding the clinic's filing practices, at the outset there was a reasonable basis to conclude that Medeiros's assistance during the search

would be materially helpful to the State troopers.[10] However, the judge ruled that Medeiros's active involvement exceeded the proper limits of civilian assistance because the executing officers did not closely supervise him, instead they granted him complete latitude to search for files, at times unaccompanied, and failed to restrict his participation to those acts which were within his special area of expertise. Finding that the search was virtually a "purely mechanical exercise" of retrieving clearly labeled and alphabetically stored files based on names listed on the addenda, the judge concluded that the facts did not support the Commonwealth's assertion that it was necessary for Medeiros to play an active role in the searches.

The case law from other jurisdictions supports the placement of restrictions on the extent of civilian involvement in police searches conducted pursuant to a warrant. See, e.g., *Clouston, supra* at 486-487 (participation of telephone company employees in warranted search held constitutional where they were instructed that they must stay with a Federal agent at all times and that their only role was to identify stolen telephone equipment, not to search for it); *People* v. *Boyd, supra* at 638 (presence of corroboration witness held constitutional where only role was to confirm identity of stolen items that were retrieved by police). See also *Stack* v. *Killian,* 96 F.3d 159, 162-163 (6th Cir. 1996) (discussing split in authority regarding whether television crew's filming of the search process is unconstitutional because the crew's presence was unnecessary to the execution of the warrant).

There are also sound policy reasons for holding the police responsible for appropriately limiting a civilian's role in the conduct of a warranted search. The motion judge noted, unlike civilians, police officers "have taken an oath to uphold federal and state constitutions and laws and are trained to conduct a search lawfully and in accordance with the provisions of a warrant . . . and, unlike sworn police officers, civilians are not subject to departmental discipline for any failure to adhere to the law." See *Morris* v. *State,* 622 So. 2d 67,

---

[10]We note that the motion judge did acknowledge that the second and third searches presented "closer questions" because, by then, the police knew that the files were alphabetically stored, and the State troopers might have learned from their involvement in the first search to recognize the nature and appearance of the documents that were subject to seizure.

68-69 (Fla. Dist. Ct. App. 1993) (invalidating search where Medicaid fraud investigators displaced, rather than assisted, the police officer charged with executing the warrant).

Accordingly, the officers should have limited Medeiros's role in the search to remaining present to assist the officers with any technical questions which may have arisen as the officers executed the warrant, particularly where the officers had ascertained the alphabetical filing system and had the cooperation of clinic employees. This ruling comports with the underlying rationale that permitting knowledgeable or expert civilians to participate in executing a warrant minimizes the intrusiveness of the search.

We recognize the wide variety of circumstances in which police may seek civilian assistance in conducting a warranted search. Although adequate police supervision ensures that the warrant is properly executed and its scope is not exceeded, the required level of supervision varies depending on the circumstances. See *State* v. *Kern,* 81 Wash. App. 308, 314-315 (1996) (search upheld where police officer unqualified to search bank records allowed disinterested bank employees to conduct warranted search for defendant's records outside of police supervision). We agree with the motion judge that "[w]hile there may be extraordinary circumstances, e.g., a search through computerized files or obtaining dental impressions, where it is necessary for a civilian with specialized knowledge actually to conduct the search, the present case does not fall within that category." See *United States* v. *Schwimmer,* 692 F. Supp. 119, 126-127 (E.D.N.Y. 1988) (upholding search executed by civilian computer expert); *Harris* v. *State, supra* (upholding search executed by dentist).[11]

2. *Inevitable discovery.* "[A]s a general rule, the mere fact that an unlawful search and seizure has occurred should not automatically result in the exclusion of any illegally seized evidence." *Commonwealth* v. *Gomes,* 408 Mass. 43, 46 (1990). "[T]he decision whether to exclude such evidence should properly turn on: (1) the degree to which the violation undermined the principles underlying the governing rule of

---

[11]In some searches, such as body cavity searches, competing privacy interests may require that an appropriate civilian actually execute the search outside of the presence of the police so as to minimize the intrusiveness of the search. See *Rodrigues* v. *Furtado,* 410 Mass. 878 (1991). No such circumstances were presented here.

law, and (2) the extent to which exclusion will tend to deter such violations from being repeated in the future." *Id.* Under the inevitable discovery doctrine, if the Commonwealth can demonstrate by a preponderance standard that discovery of the evidence by lawful means was certain as a practical matter, the evidence may be admissible as long as the officers did not act in bad faith to accelerate the discovery of evidence, and the particular constitutional violation is not so severe as to require suppression.[12] *Commonwealth* v. *O'Connor,* 406 Mass. 112, 117-118 (1989).

The motion judge correctly determined that the Commonwealth met its burden in proving the inevitability of the lawful discovery of the evidence in question. The defendant does not challenge the motion judge's conclusion that all three warrants were well supported by probable cause, the records seized were within the scope of the warrants, and the Commonwealth would have discovered the evidence even without Medeiros's involvement in the search. Nor does the defendant contest the judge's well-reasoned conclusion that exclusion would not serve a deterrent purpose considering the paucity of previous Massachusetts case law to guide the officers as to the proper limitations of utilizing civilian assistance in the execution of warrants.

What is contested is the motion judge's ruling that the severity of the constitutional violation requires suppression. See *O'Connor, supra* at 118. The judge ruled that "the violation goes to the heart of the principles underlying the governing law" because art. 14 and G. L. c. 276, § 2, "expressly require[] that warrants be executed by public officers." But see *supra* at 806-809, for a discussion of the need for expert civilian assistance in some circumstances. At their core, art. 14 and G. L. c. 276, § 2, are intended to protect individual privacy interests. See *Commonwealth* v. *Pratt,* 407 Mass. 647, 660 (1990); *Commonwealth* v. *Blood,* 400 Mass. 61, 68-69 (1987). Active civilian participation in conducting a search, absent adequate justification and police supervision, greatly increases the potential for an unreasonable intrusion of privacy because civilians are not sworn to uphold the law,

---

[12]Although here we consider these three searches as a whole because they were so intimately connected, searches conducted pursuant to separate warrants ordinarily should be considered individually for purposes of applying the inevitable discovery exception.

and they are not specially trained to conduct searches lawfully and in accordance with the provisions of a warrant. See *Morris* v. *State, supra* at 69 ("the oath [taken by law enforcement personnel] is of no small moment as a protection to our citizens when their privacy is lawfully intruded upon by a search pursuant to a warrant").

However, we conclude that, in these particular circumstances, Medeiros's participation constituted only a minimal incremental intrusion on the defendant's privacy and does not require suppression. See *Commonwealth* v. *Beldotti*, 409 Mass. 553, 559 (1991) (minimally intrusive search for occult blood on defendant's hands and arms did not require suppression). Medeiros was the chief insurance fraud investigator for a statutorily created entity which customarily worked with the Attorney General's office in a collaborative investigatory effort. Thus, the intrusion on the defendant's privacy was lessened.

For the most part, at least one of the two police officers, if not both, were in close physical proximity to Medeiros, thus protecting against excessive execution of the warrant. Contrast *Morris, supra* (search invalidated where police officer waited outside for the entire duration of the search, completely failing to participate in and supervise search conducted by six Medicaid fraud investigators). Although a close question, the brief occasions on which Medeiros searched employee offices and the office manager's desk unaccompanied by either police officer do not rise to the level of egregiousness requiring suppression, particularly where the office manager testified that Medeiros merely looked at the names of files rather than rifling through them.

Medeiros did not search anywhere that the officers were not authorized to search pursuant to the warrant, he did not request seizure of anything not properly subject to seizure, and there is no suggestion on the record that he conducted himself in a manner which would have been inappropriate for a law enforcement officer. See *State* v. *Klosterman*, 317 N.W.2d 796, 803 (N.D. 1982) ("non-law enforcement personnel must, in effect, be governed by the same rules as law enforcement personnel in considering their conduct during the search"); 2 W.R. LaFave, Search and Seizure, § 4.10 (d), at 676 (3d ed. 1996) (same language).

The result would be different had Medeiros been an

ordinary civilian brought in merely to confirm the identity of stolen property and then allowed to participate actively in the search. Contrast *United States* v. *Clouston,* 623 F.2d at 486. However, Medeiros was the affiant for all three warrants and already possessed comprehensive knowledge of the defendant's medical and business practices, particularly regarding the information uncovered pursuant to the searches.

The record demonstrates that Medeiros at all times acted solely in furtherance of the purpose of the warrant. Contrast *Buonocore* v. *Harris,* 65 F.3d 347 (4th Cir. 1995) (civil rights case discussing objectionability of police officers in allowing company security officer who accompanied them during a warranted search to conduct an independent search not in aid of the police, but rather for his own purposes in recovering stolen property not listed in the warrant), and cases cited therein.

Finally, Medeiros did not handle any of the traditional law enforcement functions which must be performed by the police in executing the search. Contrast *Morris, supra* at 68 (police officer did not take custody of any of the seized records, and he signed the inventory sheet prepared entirely by nonlaw enforcement personnel without checking its accuracy or determining whether the seized documents were within the scope of the warrant). Here the two police officers, and not Medeiros, properly presented the warrant, secured the premises, reviewed evidence retrieved by others to ensure seizure was authorized, took possession of all seized evidence, and prepared the inventory for filing the return of warrant. We note that the delegation of these functions to Medeiros would have been fatal to the Commonwealth. In these limited circumstances, we hold that the constitutional violation is not so egregious as to require suppression. See *O'Connor, supra* at 119.

The order of suppression is vacated, and the case remanded to the Superior Court for further proceedings.

*So ordered.*