# United States Court of Appeals
## For the First Circuit

No. 11-1146

SHANE M. SPENCER,

Plaintiff, Appellant,

v.

STEPHEN ROCHE ET AL.,

Defendants, Appellees.

APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MASSACHUSETTS

[Hon. F. Dennis Saylor IV, U.S. District Judge]

Before

Boudin, Selya and Lipez,
Circuit Judges.

    Valeriano Diviacchi, with whom Diviacchi Law Office was on
brief, for appellant.
    Wendy L. Quinn, Assistant City Solicitor, for appellees Roche,
Morris, and City of Worcester.
    Richard W. Jensen, with whom Morrison Mahoney LLP was on
brief, for appellee Saint Vincent Hospital.

October 18, 2011

**SELYA**, **Circuit Judge**.  This case raises interesting questions regarding the constitutional limits of searches conducted by the police with the aid of modern technology and medical professionals.  Concluding, as we do, that the search at issue here comported with the strictures of both the United States Constitution and the Massachusetts Declaration of Rights, we affirm the district court's entry of summary judgment for the defendants.

## I.  BACKGROUND

The parties are in substantial agreement about the chronology of events that sparked this action.  On July 28, 2005, Worcester police officers arrested plaintiff-appellant Shane M. Spencer for operating a motor vehicle without a license.  Shortly thereafter, one of the officers, Gary Morris, learned that a confidential informant (CI) claimed to have seen the appellant insert a package of crack cocaine into his anal cavity just prior to the arrest.  Because the CI had provided the police with reliable information in the past, Morris asked the appellant to submit to a visual inspection of his anus.  When the appellant refused, Morris and a fellow officer, Stephen Roche, nonetheless attempted to conduct the visual inspection.  Their efforts were thwarted by the appellant's refusal to cooperate.

The officers then sought a search warrant.  In an affidavit supporting the warrant application, Morris recounted the information provided to him by the CI and noted the CI's favorable

track record.  A state court judge issued the requested warrant, which authorized a search of the appellant's anal cavity for cocaine.

Armed with the warrant, the officers transported the appellant to Saint Vincent Hospital (the Hospital) so that medical professionals could perform the search.  At the Hospital, a nurse made the following note on the intake form: "[Appellant] suspected heroin + cocaine inserted rectally here [with] police [with] warrant for cavity search."  After reviewing the warrant, a licensed physician, Dr. John Scola, performed a digital search of the appellant's anal cavity.  The appellant recalls being handcuffed and held down by the officers while the doctor inserted two fingers into his rectum.

When the digital search revealed no contraband, Dr. Scola ordered an x-ray of the appellant's abdominal area.  In an affidavit filed in the district court, Dr. Scola explained that a digital examination reaches only the lower portion of the anal cavity and a more complete exploration requires the use of radiological imaging.  It is undisputed that the type of x-ray ordered by Dr. Scola — a KUB study — is the only type of x-ray that can capture the entire anal cavity.  The hitch is that a KUB x-ray also captures images of the stomach, kidneys, and other organs surrounding the anal cavity.

The appellant made it plain to the police and to the Hospital staff that he did not consent to the KUB x-ray. The x-ray was nevertheless taken and read by a radiologist (also a licensed physician), who reported finding no foreign objects in the appellant's "stomach or rectum or elsewhere in the abdomen."

In short order, the police released the appellant. No drug-related charges were filed against him. But that was not the end of the matter: on May 29, 2008, the appellant filed a federal suit against Roche and Morris. Invoking 42 U.S.C. § 1983, he alleged that the digital and x-ray searches contravened the Fourth Amendment. He later amended his complaint to add additional claims against the officers, the City of Worcester (the City), and the Hospital.

After a period of pretrial discovery, the defendants moved for summary judgment. The appellant opposed their motions. The district court granted brevis disposition to the City and the Hospital. As to the officers, the court initially granted summary judgment on a claim brought pursuant to the Massachusetts Civil Rights Act (MCRA) but denied summary judgment on a litany of other claims. The MCRA claim was quickly reinstated following the appellant's motion to reconsider. At this stage of the proceedings, the court was acting under the mistaken impression that separate x-rays had been taken of the appellant's anal cavity and stomach. The officers later clarified this point, making it

-4-

pellucid that only a single x-ray had been taken. This clarification was accompanied by the officers' request for further reconsideration of their summary judgment motion.

Confronted with this new information (which the appellant never challenged), the court reconsidered its earlier rulings. With the record clarified, the court deemed all of the searches reasonable and granted summary judgment in the officers' favor on all claims. It left undisturbed its earlier entry of summary judgment in favor of the other defendants. This timely appeal ensued.

## II. ANALYSIS

On appeal, the labyrinthine procedural travel of the district court's rulings is of no moment. Stripped of procedural flourishes, the appellant seeks review of the summary judgment entered in favor of the defendants on all counts of the amended complaint. We review the entry of summary judgment de novo. Cahoon v. Shelton, 647 F.3d 18, 22 (1st Cir. 2011). In performing this appraisal, we are not restricted to the trial court's rationale but may affirm on any ground made manifest in the record. Young v. Wall, 642 F.3d 49, 52 (1st Cir. 2011). We must construe the facts and all reasonable inferences therefrom in the light most favorable to the nonmovant (here, the appellant). Cox v. Hainey, 391 F.3d 25, 27 (1st Cir. 2004). We will affirm the entry of summary judgment only if the record, so viewed, shows that "there

is no genuine dispute as to any material fact" and that the movants are "entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).

The issues on appeal are narrowly cabined.  The appellant challenges neither the validity of the warrant nor the constitutionality of the officers' attempted visual inspection of his anal cavity.  Nor does he challenge the digital examination performed by Dr. Scola.  Rather, he contends that the x-ray was an unreasonable intrusion on his privacy and that the police compounded this intrusion by searching beyond the scope of the warrant (i.e., by searching his stomach as well as his anal cavity).  As a fallback, he contends that these actions, even if permissible under the Fourth Amendment, violated the Massachusetts Declaration of Rights.  In assaying these arguments, we remain mindful that the appellant, as the party challenging the search, has the burden of showing that it was constitutionally deficient. See Rogan v. City of Boston, 267 F.3d 24, 27 (1st Cir. 2001).

We start with the appellant's first argument: that the x-ray search of his anal cavity offended the Fourth Amendment.  As a general matter, that constitutional safeguard prohibits only those searches that are unreasonable.  Bell v. Wolfish, 441 U.S. 520, 558 (1979).  The reasonableness of a search "depends on a balance between the public interest and the individual's right to personal security free from arbitrary interference by law officers."

<u>Maryland</u> v. <u>Wilson</u>, 519 U.S. 408, 411 (1997) (internal quotation marks omitted). This means that in determining the constitutionality of a search in the teeth of a Fourth Amendment claim, an inquiring court must consider whether the circumstances and the public's need for information justify the particular intrusion into the searched individual's privacy. <u>See</u> <u>United States</u> v. <u>Cofield</u>, 391 F.3d 334, 336 (1st Cir. 2004). Holding this delicate balance steady and true requires careful perscrutation of the specific facts.

It is a piece of constitutional bedrock that individuals have a reasonable expectation of privacy regarding their bodies. Thus, a physical intrusion below the skin constitutes a search within the purview of the Fourth Amendment. <u>See</u> <u>Skinner</u> v. <u>Ry. Labor Execs.' Ass'n</u>, 489 U.S. 602, 616-17 (1989). Because individuals possess a strong interest in their bodily integrity, a nonconsensual intrusion into the body requires a particularly robust justification. <u>See</u> <u>Schmerber</u> v. <u>California</u>, 384 U.S. 757, 767-68, 772 (1966).

Withal, not every intrusion into an individual's bodily integrity offends the Fourth Amendment. An inquiring court must weigh the nature of the particular intrusion against the totality of the circumstances surrounding it to determine the reasonableness of the search. <u>See</u> <u>Winston</u> v. <u>Lee</u>, 470 U.S. 753, 760 (1985).

The Supreme Court's decision in Schmerber is instructive. There, police compelled a man suspected of driving while intoxicated to submit to a physician-administered blood test. 384 U.S. at 758. The suspect contended that the police violated his Fourth Amendment rights by taking the blood sample without his consent. Id. at 759. The Court held that the taking of the sample was reasonable under the circumstances. The Court emphasized that the police had strong probable cause to believe that the suspect had been driving drunk; that the blood test was a highly effective means of proving the crime; that the taking of the blood sample was a common, relatively safe, and relatively painless medical procedure; and that the blood had been drawn by doctors in a sterile environment. Id. at 768-72.

By contrast, the Winston Court enjoined police from compelling a suspect to undergo surgery to recover a bullet lodged in his chest, even though the bullet could have proven the suspect's involvement in a robbery. 470 U.S. at 755-56. Notwithstanding that the police had good cause to believe that the bullet would implicate the suspect in the crime, the surgery posed potentially significant health risks and was an "extensive" intrusion into the suspect's privacy interests. Id. at 763-65. Moreover, the state, which already had strong evidence of the suspect's guilt, lacked a pressing need to recover the bullet. Id. at 765-66.

These cases teach that in determining the reasonableness of an intrusion into a suspect's bodily integrity, a court must consider the strength of the suspicion driving the search, the potential harm to the suspect's health and dignity posed by the search, and the prosecution's need for the evidence sought. In certain circumstances, the court also may consider the availability vel non of a less invasive means of conducting the search. See Sanchez v. Pereira-Castillo, 590 F.3d 31, 45-46 (1st Cir. 2009).

Applying this balancing test, we have upheld digital searches of a vagina and rectum when supported by probable cause and appropriately carried out by medical professionals. See id. at 44; Rodriques v. Furtado, 950 F.2d 805, 811 (1st Cir. 1991). Conversely, we have ruled that compelling a prisoner to undergo abdominal surgery to recover suspected contraband offended the Fourth Amendment (at least in the absence of strong probable cause). Sanchez, 590 F.3d at 47-48. We have not yet considered the circumstances under which the police may be justified in compelling a suspect to submit to an x-ray search of a part of his body.[1]

In general, compelled x-rays have been viewed favorably by courts, given an appropriately supported level of suspicion. For example, courts have approved x-ray searches performed at

---

[1] To be sure, such a search was allowed in Sanchez, but the panel took pains to note that the plaintiff had not challenged the constitutionality of that procedure on appeal. 590 F.3d at 41 n.4.

-9-

border crossings when customs officials had reasonable suspicion that drugs were being smuggled internally. See, e.g., United States v. Oyekan, 786 F.2d 832, 837-38 (8th Cir. 1986); United States v. Mejia, 720 F.2d 1378, 1381-82 (5th Cir. 1983). Similarly, the Second Circuit has upheld an x-ray search of a criminal defendant who had set off a metal detector on his way to hear the jury's verdict. See United States v. Johnson, 24 F. App'x 70, 72-73 (2d Cir. 2001). And this court has described an x-ray as a "much simpler, less invasive procedure" than surgery. Sanchez, 590 F.3d at 45.

We hold today that the x-ray search of the appellant's anal cavity passed muster under the Fourth Amendment. Although the x-ray was an encroachment on the appellant's privacy interests, this encroachment was plainly outweighed by other factors. First, a diagnostic x-ray is a routine medical procedure that is brisk, painless, and generally regarded as safe.[2]  Second, there is no evidence that the x-ray was carried out in a dangerous or otherwise inappropriate manner; to the contrary, the imaging was performed by trained professionals in a hospital setting. Third, the evidence sought in the x-ray search was indispensable to corroborate the officers' suspicion that the appellant had violated Massachusetts drug laws. Fourth, the warrant itself (never challenged by the

---

[2] Although the appellant now argues that the x-ray exposed him to dangerous radiation, he failed to introduce any evidence to support this ipse dixit.

appellant) confirms the existence of probable cause to believe that the appellant had stashed drugs in his rectum.[3]  Fifth, and finally, the record reflects no less intrusive way in which the police could have verified their suspicions.[4]  Under these considerations, the compelled x-ray search of the appellant's anal cavity was reasonable.  Consequently, it comported with the Fourth Amendment.

In an effort to undermine this conclusion, the appellant advances two other arguments.  In the first place, the appellant contends that the probable cause supporting the warrant dissipated after the digital search came up empty.  The uncontroverted evidence in the record, however, is that the digital examination searched only a portion of the anal cavity.  Accordingly, the negative result did not foreclose the possibility that the appellant might be harboring drugs in his anal cavity.  See, e.g., United States v. Keszthelyi, 308 F.3d 557, 575-76 (6th Cir. 2002) (explaining that a negative result from an incomplete search does

---

[3] The search warrant not only confirmed the existence of probable cause but is, given the absence of exigent circumstances, also independently essential to a finding that the x-ray search was reasonable.  See Rivera Rodríguez v. Beninato, 469 F.3d 1, 4 (1st Cir. 2006).

[4] The appellant argues that the officers could have performed a less invasive search by monitoring his bowel movements.  But this would have required the officers to detain the appellant for a significant period of time and, thus, would not have been an acceptable substitute.

not dispel probable cause so as to require suppression of the fruits of a second, more thorough, search).

In the second place, the appellant asserts that, whether or not an x-ray search of his anal cavity might have been reasonable, the search actually performed in this case was tainted because the police unlawfully used the x-ray to search his stomach for drugs without probable cause. The premise on which this assertion rests is sound: given the terms of the warrant, the police had no right to search for drugs in the appellant's stomach. But the conclusion that the appellant would have us draw from this limitation is unfounded.

To be specific, the appellant's lament that the taking of a KUB x-ray exceeded the scope of the warrant ignores the facts. Here, the viewing of the stomach was incidental to the valid anal cavity search and, thus, did not require an independent showing of probable cause. As we already have explained, the police were justified in taking an x-ray image of the appellant's anal cavity, and the evidence is undisputed that a KUB x-ray is the only type of x-ray that can capture the entire anal cavity. It follows inexorably that the KUB x-ray was within the scope of the warrant. That the KUB study necessarily included an image of the appellant's stomach was simply an unavoidable side effect of the valid x-ray search. See Dalia v. United States, 441 U.S. 238, 257-58 (1979) ("Often in executing a warrant the police may find it necessary to

interfere with privacy rights not explicitly considered by the judge who issued the warrant.").

Laboring to blunt the force of this reasoning, the appellant counters that the real purpose of the KUB x-ray was to search the contents of his stomach. The record contains some evidence suggesting that the officers might have told Dr. Scola of their suspicion that the appellant had swallowed the drugs. For example, the radiologist's notes indicate a history of drugs being either "swallowed or inserted into the rectum" (emphasis supplied). Even assuming, however, that the officers had hoped to use the KUB x-ray to confirm their suspicion that the appellant had swallowed the drugs, the search was lawful.

A police officer's subjective motive, even if improper, cannot sour an objectively reasonable search. See United States v. Hadfield, 918 F.2d 987, 993 (1st Cir. 1990) ("It is a bedrock premise of fourth amendment jurisprudence that an officer's state of mind or subjective intent in conducting a search is inapposite as long as the circumstances, viewed objectively, justify the action taken."); see also Whren v. United States, 517 U.S. 806, 813 (1996) ("Subjective intentions play no role in ordinary, probable-cause Fourth Amendment analysis."). The circumstances of this case justified the taking of the KUB x-ray to complete the authorized search of the appellant's anal cavity, and it does not matter

whether the motivation behind the use of this procedure was to look in the appellant's stomach.

With the question of subjective intent removed from the equation, the appellant's "scope" argument collapses.  It is well settled that a police officer's observation of an item in plain view does not constitute a search so long as the officer makes his observation from a lawful vantage point.  Minnesota v. Dickerson, 508 U.S. 366, 375 (1993); Horton v. California, 496 U.S. 128, 133 n.5 (1990).  This principle likewise applies to observations made by the radiologist, who was acting as an agent of the police.

As discussed above, it was lawful for the police (and, thus, the doctor) to view the KUB x-ray of the appellant's anal cavity.  An image of the stomach necessarily appeared on that x-ray film.  The law did not require the radiologist to avert her eyes from the image of the stomach that was plainly in view.  See California v. Greenwood, 486 U.S. 35, 41 (1988).  Any observation of the stomach was therefore an incidental result of the valid KUB x-ray search and did not require an independent showing of probable cause.  Consequently, the appellant's Fourth Amendment rights were not infringed, and his section 1983 claim founders.  See Nieves v. McSweeney, 241 F.3d 46, 57 (1st Cir. 2001) ("It follows inexorably that, in the absence of an anchoring constitutional violation, [a] section 1983 . . . claim topples.").

It is, of course, a different question whether the actions taken by the officers and the doctors violated Massachusetts law. The logical starting point for that inquiry is the appellant's MCRA claim.

To prevail on a claim brought pursuant to the MCRA, a plaintiff must demonstrate, among other things, that the defendant(s) interfered with rights secured by federal or state law. See Mass. Gen. Laws ch. 12, § 11I; Swanset Dev. Corp. v. City of Taunton, 668 N.E.2d 333, 337 (Mass. 1996). Because we already have laid to rest the claim that any Fourth Amendment violation occurred, the appellant's MCRA claim depends wholly on his further contention that the x-ray search transgressed his rights under Article XIV of the Massachusetts Declaration of Rights. While Article XIV may in some instances provide a broader prophylaxis than the Fourth Amendment, see, e.g., Commonwealth v. Cruz, 945 N.E.2d 899, 906 n.10 (Mass. 2011), we find no violation of the appellant's Article XIV rights in this instance. We explain briefly.

The appellant argues that Article XIV does not permit police to enlist civilians (such as a doctor) to aid in a search unless the warrant explicitly authorizes such assistance. But the case that he cites for this proposition — Commonwealth v. Sbordone, 678 N.E.2d 1184 (Mass. 1997) — does not support the weight that he loads upon it.

-15-

Sbordone suggests, in dictum, that it would be "better practice" to list on the face of a warrant any civilians authorized to participate in the search, id. at 1188 n.9, but that dictum does not create a rule of constitutional dimension. Rather than helping the appellant's cause, Sbordone stands for the general proposition that civilian aid during an authorized search may be appropriate in some circumstances. See id. at 1188. We believe that an internal cavity search, in the circumstances at hand, was an appropriate situation for the enlistment of medical professionals.

The appellant also appears to argue (albeit without citation to any authority) that Article XIV was offended when Dr. Scola, not the police, ordered the KUB x-ray. This is a distinction without a difference. The police appropriately recruited Dr. Scola to facilitate an anal cavity search, and there was nothing improper about the police deferring to the doctor's expertise in recommending the most effective means of conducting that search.

The bottom line, then, is that the appellant experienced no interference with his Article XIV rights. Accordingly, the district court did not err in granting summary judgment against him

on his MCRA claim.[5]  See Dean v. City of Worcester, 924 F.2d 364, 370 (1st Cir. 1991).

The failure of the appellant's constitutional claims (federal and state) makes it unnecessary for us to consider separately his claims for assault and battery and intentional infliction of emotional distress.  Where the actions taken by the police are objectively reasonable, such claims cannot survive.  See id. at 369.  By the same token, the absence of an anchoring constitutional violation dooms the claim that the City failed properly to train the officers.  See Evans v. Avery, 100 F.3d 1033, 1040 (1st Cir. 1996).  Likewise, the Hospital cannot be vicariously liable because its employees committed no underlying tort.  See Sanchez, 590 F.3d at 44 n.6.

This leaves only the appellant's state-law invasion of privacy claim.  In mounting this claim, he asseverates that employees of the Hospital violated his right to privacy when they discussed the results of his x-ray with the officers.  This asseveration lacks force.

The applicable Massachusetts statute, Mass. Gen. Laws ch. 214, § 1B, proscribes only those invasions of privacy that are "unreasonable."  See O'Connor v. Police Comm'r of Boston, 557

---

[5] Although the appellant argued below that Article XIV demands a heightened level of probable cause to justify an x-ray search, he has not raised that issue in his appellate brief.  Consequently, the argument is waived.  See Surprenant v. Rivas, 424 F.3d 5, 16 (1st Cir. 2005).

N.E.2d 1146, 1151 (Mass. 1990); Bratt v. Int'l Bus. Machs. Corp., 467 N.E.2d 126, 133-34 (Mass. 1984) (explaining that invasion of privacy requires "disclosure of facts about an individual that are of a highly personal or intimate nature when there exists no legitimate, countervailing interest").  Here, it was unarguably reasonable for the Hospital's employees to convey to the officers the results of a lawful x-ray search conducted under the aegis of a valid warrant.  That ends the matter: a search that is performed in accordance with constitutional requirements and that is otherwise reasonable does not constitute an actionable invasion of privacy under Massachusetts law.[6]  See Schlesinger v. Merrill Lynch, Pierce, Fenner & Smith, Inc., 567 N.E.2d 912, 914 (Mass. 1991).

## III.  CONCLUSION

We need go no further.  For the reasons elucidated above, we uphold the lower court's entry of summary judgment in favor of the defendants.


**Affirmed**.

---

[6] To the extent that the appellant couches his invasion of privacy claim in the common law, Massachusetts has never recognized such a tort, see Alberts v. Devine, 479 N.E.2d 113, 121 (Mass. 1985), and it is not our place to create new causes of action under state law, see Porter v. Nutter, 913 F.2d 37, 40-41 (1st Cir. 1990).  In any event, we believe that any such common-law claim would exclude reasonable invasions of privacy, which is precisely what occurred here.  See Restatement (Second) of Torts § 652A (1977).